462 So.2d 907 (1984)
James L. TAYLOR, as the Administrator of the Estates of James Jackson Taylor & Laura F. Taylor, Deceased; James L. Taylor, Frances Louise Taylor Spence, Deborah Taylor, Diane Taylor Staff, Phillip Taylor and Gretta Taylor
v.
LIBERTY NATIONAL LIFE INSURANCE COMPANY, a Corp.; Aubrey Carr, d/b/a Carr-McConnell Funeral Home; Carr-McConnell Funeral Home, Inc., a Corp.; and Carr Service Enterprises, Inc., a Corporation.
83-172.
Supreme Court of Alabama.
November 21, 1984.
Rehearing Denied January 11, 1985.
*908 Jimmy E. Alexander, Alexander, Corder & Plunk, Athens, for appellant.
Ira L. Burleson and Ralph B. Tate, Spain, Gillon, Riley, Tate & Etheredge, Birmingham, for appellee Liberty Nat. Life Ins. Co.
Andrew P. Campbell, Leitman, Siegal & Payne, Birmingham, for appellees Aubrey Carr and Carr Service Enterprises, Inc.
PER CURIAM.[*]
This is a due process of law case. We must resolve this constitutional issue to determine the res judicata effect of a prior judgment, which included a finding that the requisites of due process had been met. Plaintiffs contend that they were denied due process in a class action suit in federal district court. Defendants respond that Plaintiffs are precluded from raising the due process question by virtue of the federal court's prior determination. The trial court granted Defendants' summary judgment motions based on their res judicata argument.
We conclude that this Court may review the due process determination of the federal court. Further, we find that the instant Plaintiffs' deceased insureds did not receive the process that was their due. Accordingly, we reverse the trial court's summary judgment as to the contract claims. We affirm as to the remaining claims.

HISTORY OF THE CASE

I. The Prior Federal Court Action
The United States District Court for the Northern District of Alabama on January 6, 1978, entered a final judgment in Battle v. Liberty National Life Ins. Co., Civil Action No. 70-H-752-S. Battle was a consolidated case, filed against Liberty National and Brown Service Funeral Homes Co., Inc.,[1] on behalf of certain funeral directors in Alabama and certain insureds under burial and vault policies of those companies. The consolidated actions asserted, in essence, claims against Liberty National and Brown Service for violations of federal anti-trust laws and the McCarran-Ferguson Act and for fraud and deceit.[2]

II. The Instant Case
The controversy in this case involves the funerals of James Jackson Taylor and his *909 wife, Laura F. Taylor. In 1938, Mrs. Taylor purchased a Liberty National burial policy, which provided the following benefits:
"(A) [A] a casket of the retail value of $250.00...;
"(B) A place where funeral, memorial, or other services may be held and such assistance as is proper in conducting the funeral; such services to be conducted either at the church, funeral parlor, home of the deceased, or other place designated by the beneficiary or other person having the authority;
"(C) Embalming of body, suit or dress and hearse service for the body to the cemetery...."
In 1955, Mrs. Taylor purchased a supplemental burial policy to provide a $500 metal casket for her funeral, in lieu of the casket furnished by the first policy.
Mr. Taylor purchased his burial policy in 1946 and a supplemental burial policy in 1955. The terms of his policies were the same as those of his wife's policies. Mr. Taylor died on February 24, 1982, and Mrs. Taylor died on February 3, 1983.
The trial court's order included the following:
"... Mr. and Mrs. Taylor at the times of their respective deaths were insured under burial insurance policies issued or assumed by Liberty National. Representatives of their family called Carr-McConnell Funeral Home of Athens, an authorized funeral director of Liberty National-Brown-Service, to pick up the bodies and turned over to Carr-McConnell the funeral policies in effect on the life of the deceased and made funeral arrangements with Carr-McConnell. The family on each occasion decided not to use the casket furnished under the burial policies and selected and bought from Carr-McConnell a `better' or more expensive casket. When this occurs this is what is known in the funeral director industry as an `oversale.' Carr-McConnell, in the case of each funeral, made a charge for the more expensive casket and also made a charge in Mr. Taylor's funeral for `Services: Including facilities, equipment, all personal, professional and staff services....'"
The charges for Mr. Taylor's funeral totaled $1,898, while the charges for Mrs. Taylor's funeral were:
"Embalming the body, $809.00.
Providing a place where the funeral was held, $515.00.
Furnish transportation for the body to the cemetery, $280.00.
Casket, $782.00.
Burial vault, $525.00.
Opening and closing grave, $80.00.
Hair Dresser, $20.00.
TOTAL, $3011.00"
The Taylor family alleged that the caskets provided Mr. and Mrs. Taylor by the funeral home were of the same quality and price; that Mr. and Mrs. Taylor were embalmed in the same manner and location; and that the same hearse was used to carry the bodies of Mr. and Mrs. Taylor to the same cemetery.
The funeral home allowed a total credit of $600 for both of Mr. Taylor's burial policies, but only offered a total credit of $500 for both of Mrs. Taylor's policies, which the family refused to accept.
The administrator and heirs of Mr. Taylor's estate brought suit against Liberty National and Aubrey Carr, the operator of Carr-McConnell Funeral Home in Athens. Count one of the complaint sought recovery for monies due and owing on the burial policies, while count two sought recovery for misrepresentations as to the amount due and owing on the policies, and count three sought recovery from the insurer for a bad faith refusal to pay. Likewise, the administrator and heirs of Mrs. Taylor's estate brought suit against Defendants on similar grounds. The cases were consolidated for trial. Plaintiffs appeal the summary judgment granted on behalf of Defendants by the trial court.

OPINION
Plaintiffs acknowledge at the outset that if the Taylors were not denied due process in the prior proceedings, the federal class *910 action decree rewrote the subject policies of insurance to the effect that Defendants' res judicata claim is valid and the trial court's summary judgments are due to be affirmed. That is to say, absent a due process question, Plaintiffs do not dispute the consequences which would follow from the application of the federal class action decree.
A due process question, however, is raised. Plaintiffs assert that because the Taylors received no noticeactual or constructiveof any of the Battle proceedings, they were denied due process and are not bound in the instant case by the prior judgment.

I. Standard of Review
Crucial to our consideration of the due process issue is the applicable standard of review. If, as the instant Defendants contend, the federal decree's holding is not subject to collateral attack, and thus must be given res judicata effect, our inquiry ends before it begins. Admittedly, the district court's final decree, approving the settlement agreement, explicitly found:
"The adequacy of representation of the classes, the notice, the opportunity to participate and to be heard, meet the requirements of due process and satisfy the notice requirements of Rule 23."
If, on the other hand, as the instant Plaintiffs contend, this Court is legally authorized to review the adequacy vel non of the notice afforded these insureds, then the propriety of the federal judgment on which the trial court based its order is subject to our independent determination.
Under the settled law applicable to these circumstances, there is no question that this Court is empowered to review a judgment collaterally attacked on due process grounds. See, generally, 3 Newberg on Class Actions, § 2755b (1977); Note, Collateral Attack on the Binding Effect of Class Action Judgments, 87 Harv.L. Rev. 889 (1974). Indeed, the Federal Rules Advisory Committee itself states that "the court conducting the [class action] cannot predetermine the `res judicata' effect of the judgment; this can only be tested in a subsequent action." Fed.R.Civ.P. 23, Advisory Committee's Note, 39 F.R.D. 98, 106 (1966).
The United States Supreme Court squarely addressed this issue in Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). The Hansberry Court held that, if the res judicata effect of the prior judgment is collaterally attacked on due process grounds, it is the duty of the reviewing court to examine the prior litigation and determine if the complainant was given constitutional notice and opportunity to be heard. Id. at 40, 61 S.Ct. at 117. See, also, Gonzales v. Cassidy, 474 F.2d 67 (5th Cir. 1973). As one federal judge turned commentator noted, "Omniscience [on the part of the court that first hears the class action] is not expected or necessary." M. Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 46 (1968). Thus, we find ourselves duty bound to review the federal court's determination of the notice issue.

II. Class Certification
As our discussion will demonstrate, compliance with Rule 23's notice requirements does not, of itself, satisfy constitutional due process, unless the court also correctly certifies the class. Therefore, to determine if the insureds were given due process, we must first examine the federal court's certification of the policyholder class. Generally, what type notice, if any, is due in a class action depends on how the class is certified.
Fed.R.Civ.P. 23 sets forth three types of class actions: 1) A 23(b)(1) action is proper in cases where the rights of individual class members would be prejudiced if the suit were brought individually or in cases in which inconsistent adjudication among the parties might result if the suit were individual rather than class; 2) a 23(b)(2) suit is limited to those cases in which the relief requested is primarily declaratory or injunctive in nature; and 3) a 23(b)(3) suit's prerequisites are that common questions of law and fact predominate over any questions affecting only individual class members *911 and that a class action is the fairest and most efficient method for the adjudication of the controversy. More simply, if the relief requested is predominantly monetary, the action must be brought as a 23(b)(3) suit. Fed.R.Civ.P. 23(b); Advisory Committee's Note to that rule, 39 F.R.D. 98, 102 (1966).
Notice is mandatory only in 23(b)(3) suits. Fed.R.Civ.P. 23(c)(2). In Rule 23(b)(1) and (b)(2) suits, some courts have held that notice is discretionary, but the majority rule is that no notice at all is required. See Note, Class Actions: Certification and Notice Requirements, 68 Geo.L.J. 1009, 1028 (1980). The reasons usually asserted for requiring notice (or more notice) in a 23(b)(3) suit and not in 23(b)(1) and (2) suits are: 1) 23(b)(1) and (b)(2) classes by their nature are more cohesive than (b)(3) classes, Fed.R.Civ.P. 23; Advisory Committee's Note to Rule 23(b), 39 F.R.D. 98, 106 (1966); and 2) 23(b)(3) suits involve the adjudication of property rights, which requires notice to afford absent class members due process. Note, Class Actions: Certification and Notice Requirements, 68 Geo.L.J. 1009, 1028 n. 161 (1980). As that law journal note concisely states:
"When only injunctive and declaratory relief are sought in a class action, `the due process interests of absent members will usually be safeguarded by adequate representation alone.' When individual monetary claims are at stake, however, `the balance swings in favor of some form of notice.'" Id. at 1029 (quoting Johnson v. General Motors Corp., 598 F.2d 432, 438 (5th Cir.1979)).
Thus, if analyzed in terms of what the class members have at stake in the different types of class actions, the reason for the different notice requirements for the different type classes is obviousdue process itself requires different notice based on what rights and obligations are at stake in each of the three different class types. At the same time, it is obvious that a class must be correctly certified under Rule 23, or it may not command the process that is its due. Otherwise stated, mere compliance with the Rule's notice requirements for a particular type class action does not necessarily mean that due process is given, unless the class was certified correctly to begin with. Notice is not a function of class type; class type is a function of notice.
In the Battle case the federal district court, without explanation, certified the policyholders as a 23(b)(2) class. As previously stated, the majority of jurisdictions hold that no notice is required in 23(b)(2) suits. Therefore, according to the majority position, if the federal court's 23(b)(2) certification of the policyholder class was correct, the instant insureds were not entitled to notice.
At this point, in order to evaluate the federal court's certification determination and to fully appreciate the Plaintiffs' argument that their insureds were deprived of due process because of insufficient notice, we need to retrace, in overview, how the Battle settlement came about. This suit had its origin in 1970 in a justiciable controversy between the funeral directors and the insurance company, which, in turn, had its roots in the growing dissatisfaction on the part of the directors with what they perceived as a forced adhesion contract with the insurer to service the insurer's burial policies.
The policyholder class was not joined as parties plaintiff until September 22, 1977. The federal court's order of that date established the "temporary settlement class" and also set forth a "tentative" settlement agreement. Thus, at the time the policyholder class was joined, the original parties had already decided on the settlement. Indeed, the reason the "insureds under burial insurance policies of Liberty National" were denominated by the federal court orders as "members of the temporary settlement class" was that neither the insurance company nor the class of funeral directors, as between themselves, was willing to make the concessions necessary to reach an acceptable settlement agreement.
In essence, then, these initial parties agreed to settle their dispute only in the *912 event they could effect a concession from the policyholders in the nature of substantially reduced obligations on the part of the insurance company, which, in turn, would also permit the funeral directors to charge at will for their services and merchandise, if the insured's representative chose services or products varying in any particular from those stated in the policy.
One additional factor deserves emphasis. The policyholder class, once certified, stood only to lose, and to lose substantially. At stake in this settlement, as postured at the moment of class certification, was not the slightest chance that the policyholders' interests would be affirmatively served, despite the fact that they were joined as parties plaintiff. From the policyholders' point of view, it was a "no win" situation, guaranteed by the "temporary settlement" status of the class as certified by the federal court. Put another way, just in case, by some unforeseen event, something went wrong with the settlement proposal, the surreptitiously created "temporary settlement class" of policyholders could be terminated, so as not to pose a threat to the adverse interest of the original parties.[3]
As it turned out, both the funeral directors and the insurance company won, not at the expense of each other, but totally and completely at the expense of the policyholders. In the final analysis, then, there was no settlement, in a give and take sense, between the funeral directors on the one hand and Liberty National on the other. The settlement was between the undertakers and Liberty National on one side and the policyholders on the other.
This is not to say that the federal decree approving the "settlement agreement" did not enumerate "many advantages to the members of the policyholder class." For example, the court said that, as part of the settlement agreement, it would
"determine the quality of the casket to be furnished in fulfillment of the obligations of Liberty National under its burial insurance policies so that policyholders will receive funerals having a retail value not less than the value stated in the policy."
What the court says it would "determine" was already an obligation fixed by the terms of the policy itself.
Another example of "advantages" cited in the federal judgment was that
"[t]he increased payments required by the Settlement Agreement to be made to authorized funeral directors and the more objective standards of acceptability to become authorized funeral directors will also redound to the benefit of the policyholder."
Apparently, this referenced "benefit of the policyholder" consists in the court's assurance that henceforth burial merchandise and services will more nearly comport with the reasonable expectations of the policyholder, pursuant to the contractual obligations of the parties. Surely, no one could seriously contend that such "advantages" constitute a quid pro quo component of the "settlement agreement" in question. Because one is now assured that he will get certain benefits to which he was already entitled under the policy, reasons the federal decree, the court will approve a "settlement" that rewrites the policy and takes away substantial benefits to which he was already entitled. The foregoing is indicative of the true nature of the advantages of the "settlement agreement" to the individual policyholder.
*913 The disadvantages to the policyholder class were substantial. For example, before the settlement agreement, if a policyholder's family chose a more expensive casket, his estate was obligated, by the terms of the policy and by the practice of the industry for many years, for the difference between the stated policy value of the casket and the cost of the casket actually purchased, plus incidentals not provided by the policy, but other merchandise and services were furnished in accordance with the policy.
After the settlement agreement, however, the policies remain effective, as written, only if all the merchandise and services are accepted exactly as provided by the policy. Any change voids the policy and permits the funeral parlor to charge as it pleases for each item, allowing as a credit only the policy designated retail value of the item (even the $20 hairdresser charge for Mrs. Taylor would constitute an "oversale" and void the policy.) In the present case, the difference for Mrs. Taylor's burial expenses before and after the settlement agreement, the amount in dispute, is approximately $1600more than half of the total charges for her burial.
Under these circumstances, then, in what class should the instant insureds have been certified to assure them of due process? Even if the proposed settlement, in fact, had been "tentative," offering at least the potential of material, affirmative relief, when the court brought the policyholders into the Battle litigation, they should have had notice; and this for the reason that they stood to lose vested property rights under paid-up burial insurance policies. But at the time they were made parties to the settlement agreement, the policyholders stood only to lose, with not an outside chance of gaining even an offsetting benefit for the materially depreciated benefits otherwise assured under these burial policies. A more classic taking of property can hardly be imagined. In many cases where the taking was less onerous than in Battle, courts have held that notice was due. See, e.g., Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
To dramatize this point, we observe the obvious: The insurer, as the named defendant in the Battle action, obtained affirmative relief (amounting to millions of dollars) at the expense of the policyholdersrelief that would have been impossible in a direct action by the insurer against the insureds for reformation of the insurance policies. In other words (and no one contends otherwise), settled principles of contract law would dictate summary judgment on behalf of the insureds in any action on the part of the insurer to alter the terms of these burial policies in the manner effected by the federal class action.
Under the facts before us, we have no difficulty in holding that these policyholders were entitled to some form of notice. Thus, because they were entitled to notice, it follows that the policyholders should have been certified as a Rule 23(b)(3) class, it being the only class type where notice must be given. To be sure, in the pleadings the alleged policyholder class requests injunctive and monetary relief ($60,000,000), which might indicate that they properly could have been certified as a 23(b)(2) injunctive type class. Yet, this request for relief formed no basis for the settlement agreement, rendering the socalled plaintiff status for the policyholders a mere facade created by the originally named parties. At that point in the proceedings, the policyholders could only lose; and, indeed, as we have seen, they did loseand lose substantially. Therefore, the policyholders should have been certified as a 23(b)(3) class in order to avoid due process violations.

III. Adequacy of Notice
We now turn to the question of what notice was due to the policyholder class. The due process notice standard for a 23(b)(3) suit is set out in 23(c)(2): "[T]he court shall direct to members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through *914 reasonable effort." The federal court found that "there is no record which sets forth the addresses of the current policyholders. Indeed, there is not even an alphabetical listing of the policyholders. The records with regard to the policies are kept by number only." Under these circumstances, the court ordered:
"Notice to the insured policyholders class in the form attached shall be delivered by debit agents of the Defendants Liberty National Life Insurance Company by leaving a copy thereof at each place where all such agents in Alabama call upon a policyholder of the Defendant Liberty National Life Insurance Company for any purpose for a period of four consecutive weeks beginning not less than 45 days prior to the date of the hearing."
The federal court held that this home delivery notice, supplemented with "intensive and widespread media coverage" (articles published in two "leading" Birmingham daily newspapers and news programs on two "local" Birmingham television stations), constituted the best notice practicable; and, therefore, the federal court found the requisites of due process were met.
The Plaintiffs appear to argue that anything less than actual notice deprived them of due process. They state in their brief:
"[On] the fourth page of the Battle consent judgment, the Court states that several articles were published in the two leading Birmingham daily newspapers and that news programs on two local television stations called attention to the hearing. Neither Mr. nor Mrs. Taylor at any time received a Birmingham newspaper and neither received programs originating from any Birmingham television station. In fact, Mr. Taylor could not read during the period of 1973 to the summer of 1980 when he had a cataract operation, and Mrs. Taylor's speech was severely impaired continuously from the time she suffered a stroke in 1975 and until her death on February 3, 1983. This Court may take judicial notice that Limestone County's northern border is the Tennessee state line, and the town of Athens in which the Taylors lived is located only fourteen miles south of the Tennessee border. The record fails to reflect any attempt by Liberty National to give any actual notice to the Taylors of the court proceedings in which the Battle consent judgment was rendered."
The court's attempt to actually notify policyholders through debit agents was doomed to failure from the start with respect to those policyholders, like the Taylors, who had paid-up policies. Presumably, the debit agents had no reason to call on these policyholders, unless, coincidentally, they were insureds under other Liberty National industrial-type policies. Thus, it is conceded that the Taylors did not have actual knowledge of the settlement agreement and the court proceedings incident thereto.
Moreover, the instant insureds, and others similarly situated, quite possibly were entitled to the best possible notice.[4] Being paid up, with vested property rights, they stood to lose more than other members of their class. But whether Rule 23(c)(2) requires actual notice, under the totality of the circumstances, we need not decide. At the very least, the instant insureds were due constructive notice, which they did not get.
In Lamb v. United Security Life Co., 59 F.R.D. 25, 42 (S.D.Iowa 1972), the court *915 implied that unless unidentifiable class members constitute a relatively insignificant element of the class, due process requires constructive notice before a class judgment is res judicata. We do not consider the Taylors, with their vested property rights, members of an insignificant class element. We find that some attempt at constructive notice was their due.
In order to protect unidentifiable class members and provide "the best notice practicable under the circumstances," many courts supplement actual, mailed notice to widespread class members with constructive notice by publication. See In re Scientific Control Corp. Securities Litigation v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 80 F.R.D. 237 (S.D.N.Y.1978); Lamb v. United Security Life Co., supra. No notice by publication was attempted in the instant class action.
We recognize, as did the United States Supreme Court in Mullane v. Central Hanover Bank & Trust Co., supra, that notice by publication is inherently weak. We also acknowledge that some courts require more explicit publication notice than standard legal advertising. See, e.g., Biechele v. Norfolk & Western Ry. Co., 309 F.Supp. 354 (N.D.Ohio 1969); Berland v. Mack, 48 F.R.D. 121, 130 (S.D.N.Y. 1969). Yet, here, although we have not approved publication as meeting the notice requirements of Rule 23, publication notice, even with all of its infirmities, would have been superior to that received by the instant insureds. Because, according to the insurer, it was impossible to actually notify paid-up policyholders, "media coverage" in Birmingham was supposed to be their "due process." We hold that routine newspaper and television "media coverage," even as to those policyholders within close proximity to its source of distribution, does not constitute constructive notice and due process for the taking of substantial property rights. The Taylors, at the very least, were entitled to some formal attempt at constructive notice in order to have the "best notice practicable under the circumstances."
Therefore, because a requisite element of the res judicata test is missing, the settlement in the federal suit does not affect the Taylors' interests in their respective policies; thus, the trial court erred in granting Defendants' motions for summary judgments as to the contract claims. As to the tort counts for misrepresentation and bad faith, we agree with the trial court that the facts and circumstances here alleged do not state claims for which relief can be granted.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
FAULKNER, JONES, ALMON and EMBRY, JJ., concur.
MADDOX and BEATTY, JJ., dissent.
TORBERT, C.J., and SHORES and ADAMS, JJ., recuse themselves.
MADDOX, Justice (dissenting).
The thrust of the majority opinion is that a state court can review, on collateral attack, a federal decree entered in a class action and can determine whether the notice required by the federal court complied with due process requirements. While I agree that a court conducting the class action cannot predetermine the res judicata effect of its own judgment, I believe the principles of res judicata are uniquely applicable in this case, because the federal court determined in Battle that the "requirements of due process" were met,[1] and in paragraph XXXIII of its decree retained jurisdiction over both the subject matter and the parties "for the purpose of enabling any of the parties to [that] action to apply to [that] court at any time for further orders and directions as may be necessary.... (Emphasis added.)
*916 Consequently, I am of the opinion that these plaintiffs could seek the relief they here seek in the federal forum, and if still aggrieved could prosecute appeals in the federal system; therefore, I would affirm the judgment of the trial court, which held in part as follows:
"The subject matter of the claims of the representatives of the policyholder class was based on the sale, issue and performance of the burial insurance policies issued or assumed by Liberty National. They sought to recover damages against the defendants for allegedly injuring them in the sale of funerals, funeral services, funeral merchandise and burial insurance relating thereto. The [federal district court] in Battle described [representatives of the policyholders] as claiming violations of the anti-trust laws and also [stated that representatives of the policyholders] had invoked the pendente lite jurisdiction of the [federal district court] in counts of misrepresentation and fraud with respect to burial insurance policies issued or assumed by Liberty National. Plaintiffs charged Liberty National had engaged in deceptive sales tactics in the marketing of burial insurance policies and they sought compensatory and punitive damages for the fraud and deceit allegedly practiced on them."
I can readily appreciate the concern of the plaintiffs about the adequacy of the notice in the federal proceeding, but I am not convinced completely that the notice required by the federal court did not comport with due process requirements, as that court found.
I am aware of the principle that individual notice to class members certified under subdivision (b)(3) of Rule 23, Fed.R.Civ.P., is mandatory where class members can be identified with reasonable effort, Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176-177, 94 S.Ct. 2140, 2151-2152, 40 L.Ed.2d 732 (1974); First Alabama Bank v. Martin, 425 So.2d 415, 423 (Ala.1982). I am also aware that notice in (b)(2) class actions is discretionary with the federal district court, Johnson v. General Motors Corp., 598 F.2d 432, 436 (5th Cir.1979). A federal appeals court has written:
"It does not follow that because notice in (b)(2) actions is not made mandatory by Rule 23, every (b)(2) action in which notice is absent will automatically bar all subsequent efforts by members of the class to litigate claims that might have been brought in the original class action. Before the bar of res judicata may be applied to the claim of an absent class member, it must be demonstrated that invocation of the bar is consonant with due process. E.g., Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1942); Gonzales v. Cassidy [474 F.2d 67 (5th Cir.1973)]."
Id.
In its order of September 22, 1977, tentatively approving the settlement agreement and establishing temporary classes for the settlement, including a class of policyholders pursuant to Rule 23(b)(2), the federal district court in Battle noted:
"6. The number of members of the temporary settlement class consisting of insureds under burial instruance policies of Liberty National exceed 1 million and their names and addresses cannot be ascertained through reasonable effort.
"* * * *
"8. The best notice practicable for members of the temporary settlement class composed of insureds under burial insurance policies of Liberty National and those claiming any interest therein is written notice to be delivered by agents of the Company as hereinafter provided."
"In a rule 23(b)(2) class action, mechanics of the notice process are left to the discretion of the district court subject only to the broad `reasonableness' standards imposed by due process." Fowler v. Birmingham News Co., 608 F.2d 1055, 1059 (5th Cir. 1979).
With regard to the notice aspect of Battle, the federal district court made the following findings a part of its final order:
"Notice to members of the two temporary settlement classes established by *917 the Court in its order of September 22, 1977, has been given as directed by the Court. Such notice was the best practicable to members of both temporary settlement classes and was reasonably calculated to give actual individual notice to the members. There was intensive and widespread media coverage calling attention to the terms of the Settlement Agreement and the hearing. Several articles were published in the two leading Birmingham daily newspapers having a general circulation throughout the State of Alabama. These articles called attention to the hearing, discussed the nature of the suits, and expressly stated the time and place of the hearing. News programs on two local television stations similarly called attention to the time, place and nature of the hearing. The Court is of the opinion that as a result of the notices and widespread media coverage approximately 90 percent of the burial and vault insurance policyholders of Liberty National in the State of Alabama received notice of the proposed settlement and of the hearing thereon. The adequacy of representation of the classes, the notice, the opportunity to participate and to be heard, meet the requirements of due process and satisfy the notice requirements of Rule 23."
Based on these findings of the federal district court the circuit court, in my opinion, was authorized to conclude that the notice provided policyholders certified under subsection (b)(2) of Rule 23 with adequate notice, and satisfied the stricter requirements of (b)(3) certifications, which requires "the best notice practicable under the circumstances." Rule 23(b)(2), Fed.R. Civ.P. Thus, I believe the trial court, in this case, could hold that the notice afforded policyholders in Battle was, under the circumstances of this case, where jurisdiction was retained, sufficient to comport with the requirements of due process and to make the final judgment binding on absent members of the class. Cf. Hallman v. Pennsylvania Life Ins. Co., 536 F.Supp. 745 (N.D.Ala.1982) [plaintiff's failure to receive through the mail personal notice of a judgment in a California case settled by decree, the notice being given pursuant to Rule 23(c)(2) and 23(e), did not preclude res judicata effects]. See generally, 2 Newberg on Class Actions § 2755(b) (1977).
By letter brief, submitted following the argument of the instant case before this Court, appellants contend that the class action is not binding because the class members were not adequately represented. Clearly, a class member cannot be bound by a judgment in an action in which he was not adequately represented by the class representative. Hansberry v. Lee, 311 U.S. 32, 44-45, 61 S.Ct. 115, 119, 85 L.Ed. 22 (1940); Fowler v. Birmingham News Co., supra, 608 F.2d at 1058. In Gonzales v. Cassidy, 474 F.2d 67 (5th Cir.1973), the court announced the following standard for determining whether the interests of a class have been adequately represented:
"We hold that the primary criterion for determining whether the class representative has adequately represented his class for purposes of res judicata is whether the representative, through qualified counsel, vigorously and tenaciously protected the interests of the class. A court must view the representative's conduct of the entire litigation with this criterion as its guidepost."
Id. at 75; see generally 2 Newberg on Class Actions § 2755(c) (1977).
The federal district court made an express finding that the policyholder class had been actively represented by attorneys for the class in this case. I am of the opinion that, based on these findings, the circuit court could have concluded that the class representative, represented by qualified counsel, "protected the interests of the class," and that the class action in Battle was binding with respect to the appellants here. In short, I believe, under the particular circumstances of this case, that the trial court correctly applied the doctrine of res judicata.
The doctrine of res judicata provides that matters once adjudicated are settled and determined if: (1) the judgment in the prior *918 action was rendered by a court of competent jurisdiction; (2) the judgment in the prior action was rendered on the merits; (3) the parties in both actions are substantially identical; and (4) the causes of action or issues are the same in both actions. Ozley v. Guthrie, 372 So.2d 860, 861 (Ala.1979); Wheeler v. First Alabama Bank, 364 So.2d 1190, 1199 (Ala.1978). When these elements are present, the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action. Ozley v. Guthrie, supra; Wheeler v. First Alabama Bank, supra. Res judicata likewise bars the litigation of claims in state court which were heard or could have been heard in a prior class action in federal court. Century 21 Preferred Properties, Inc. v. Alabama Real Estate Comm'n, 401 So.2d 764, 768-69 (Ala.1981); Educators' Investment Corp. v. Autrey, 383 So.2d 536, 538-539 (Ala.1980). In Century 21, I would have authorized the state court action to proceed, and I dissented there on the ground that I thought that "[n]one of the parties plaintiff presently before this Court [in the state action] was a party to the federal litigation, nor did any of these parties plaintiff participate in any manner in the federal court litigation" (emphasis in original dissent). There, this Court's action was so contrary to the result reached by the majority in the present case that it is instructive to quote substantially from the Century 21 case, 401 So.2d 764 at 768-70:
"While, ordinarily, it is not this Court's function to inquire into a party's motives in his pursuit of legal remedies, we are constrained to observe that the journey of these combined federal and state litigations run[s] afoul of the nonrelitigation spirit of the res judicata and equitable estoppel doctrines. Simply stated, Appellants, though identical parties in interest, having exhausted their remedy in one forum, now seek `another bite at the apple' in a second forum.
"Substantial Identity of Issues.
"Under both Alabama law (Educators' Investment Corp. of Ala., Inc. v. Autrey, 383 So.2d 536 (Ala.1980), and Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190, 1199 (Ala. 1978)) and federal law Wasoff v. American Automobile Insurance Co., 451 F.2d 767, 769 (5th Cir.1971)), the doctrine of res judicata prohibits the relitigation of all matter which was or could have been litigated in the prior action.
"This doctrine is based on the notion that [a] party ... is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There would be no end to litigation if such a practice were permissible.' Baltimore Steamship Company v. Vernon Phillips, 274 U.S. 316 [47 S.Ct. 600, 71 L.Ed.2d 1069] (1927).
"This doctrine also `bars state litigation on a part of the claim that could have been, but was not, heard in a federal action and it bars suit in a state court on a state law claim that, under the doctrine of pendent jurisdiction, could have been joined with a claim under federal law in the federal action.' 17 Wright & Miller, Federal Practice and Procedure, § 4226, at 343-4 (1978). See, also, Educators' Investment Corp. of Ala., Inc. v. Autrey, supra.

"Inherent in such substantive principles of jurisprudence is a determination, in this case by this Court, of whether or not the moving party was precluded from asserting both state and federal theories of recovery in the initial federal court proceedings. Such a determination, be it pro or con, must necessarily coincide with an analysis of pendent jurisdiction.

"Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim `arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority ...,' U.S. Const., art. III, § 2; and the relationship between that claim and the state claim permits the *919 conclusion that the entire action before the court comprises but one constitutional `case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062 (1933).
"The state and federal claims must derive from a common nucleus of operative fact. See Starker v. U.S., 602 F.2d 1341 (9th Cir.1979). But if a plaintiff's claims, regardless of their federal or state character, are such that he would be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); cf., Armstrong Co. v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 196, 83 L.Ed. 195 (1938). Note, Problems of Parallel State and Federal Remedies, 71 Harv.L.Rev., 513, 514 (1958).
"State law claims are appropriate for federal court determination if they form a separate but parallel ground for relief also sought in a substantial claim based on federal law.
"`"[T]he whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time."` [United Mine Workers of America v. Gibbs, supra, citing Baltimore Steamship Company v. Vernon Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927).]
"Pendent jurisdiction need not be exercised in every case in which it is found to exist. It is a doctrine of discretion, not of plaintiff's right. United Mine Workers of America v. Gibbs, supra; Massachusetts Universalist Convention v. Hildreth & Rogers Co., 183 F.2d 497 (1st Cir.1950). Moynahan v. Pari-Mutuel Employees Guild of California, Local 280, 317 F.2d 209, 211-212 (9th Cir.1962). Its justification lies in considerations of judicial economy, convenience and fairness to litigations. Generally, absent these considerations, federal courts hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); United Mine Workers of America v. Gibbs, supra.

"Ordinarily, the question of power to hear the whole will be resolved on the pleadings. But whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation. United Mine Workers of America v. Gibbs, supra.

"Appellants' argument in federal court, as well as before this Court, is bottomed upon the alleged `unfairness' of the `50:50' Rule. Whether it be a challenge to the Commission's authority to promulgate such a mandate or allegations concerning an absence of minimum procedural due process guarantees prior to its enactment, Appellants' center of gravityabout which all else turnsremains the reasonableness of the `50:50' Rule.
"While we are quick to note the nebulosity of the term `common nucleus of operative fact,' any holding negating its presence in the instant case would read the concept right out of existence. Assuming substantial identity of parties, we hold, therefore, that Appellants' state and federal claims are simply alternative grounds of recovery for the same cause of action.
"Substantial Identity of Parties
"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies. Parkland Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Res judicata applies where the parties to both suits are `substantially identical.' Wheeler v. First Alabama Bank of Birmingham, supra; Astron Industrial Associates, Inc. v. Chrysler Motors Corp., 405 F.2d 958, 961 (5th Cir.1968).
"Judgments can bind persons not party (or privy) to the litigation in question where the nonparties' interests were represented adequately by a party in the *920 original suit. Southwest Airlines Co. v. Texas International Airlines, 546 F.2d 84, 94-95 (5th Cir.1977). A person may be bound by a judgment even though not a party to a suit if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative. Aerojet-General Corporation v. Askew, 511 F.2d 710, 719 (5th Cir.1975). Moreover, if a party has `a sufficient "laboring oar" in the conduct' of the litigation, then the principle of res judicata can be actuated. Montana v. U.S., 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979).
"Appellants contend, and we agree, that the parties to the federal action and in the cause now before us were not identical. Applying the legal precedent to the facts heretofore set out, however, we find they were `substantially identical,' that Plaintiffs' rights in this action were adequately represented in the federal litigation, and that identical parties in interest retained central control of the litigation in both forums. See Restatement (Second) of Judgments §§ 78, 78.1 and 88 (Tent. Draft Nos. 3 and 4, 1976, 1977).
"In summary, our holding is that (1) both the federal and state claims arose from a common nucleus of operative fact; and (2) the parties to both causes were substantially identical. Therefore, Appellants' action in the circuit court is barred by the doctrine of res judicata. Thus, the trial court's judgment denying the relief sought by the Plaintiffs is affirmed.
"We further express the opinion that the trial court's findings on the merits of the case are compelled by Century 21 Real Estate Corp. v. Nevada Real Estate Advisory Commission, 440 U.S. 941, 99 S.Ct. 1415, 59 L.Ed.2d 630 (1979)."
Appellants do not take issue with the fact that the Battle judgment was rendered on the merits by a court of competent jurisdiction. The question remains, however, whether or not the remaining two elements of res judicata are to be found in the present action.
Was there an identity of the parties? The trial judge found that all the elements of res judicata were present so as to bar appellants' litigation; thus, the trial judge found that there was a "substantial identity" of the parties in both suits. I believe his finding is supported by the evidence. Indeed, it appears that each of the parties to this action was either a party or a privy of some class member in the Battle litigation. Appellee Liberty National was a party defendant in both actions, and appellee Aubrey Carr was a member of the class of funeral directors in Battle. Mr. and Mrs. Taylor, and hence appellants as well, were members of the class consisting of "all insureds under outstanding burial and vault policies issued, assumed, or reinsured by Liberty National and all persons with any right, title or interest in or benefit under such policy."
Appellants argue, however, that there is no substantial identity of the parties, because Aubrey Carr, as a member of the class of funeral directors, "occupied the same side" as the policyholder class in the litigation before the federal court.
Notwithstanding appellants' argument, I believe that adversity is not determined simply by the alignment of the parties. As the court observed in Universal Underwriters Ins. Co. v. Ford Motor Co., 264 F.Supp. 757 (E.D.Tenn.1967):
"The styling of the parties in the original proceeding does not necessarily determine whether they are adversaries. The test is whether they make each other adversaries by raising issues among themselves. If they do they are bound by the findings of the jury or the Court, whichever is the finder of the facts. The parties are also bound by the conclusions of law with respect to the issues before the Court or such issues as could have been brought before the Court."
Id. at 759; accord, Diamond Shamrock Corp. v. Lumbermens Mut. Casualty Co., 416 F.2d 707 (7th Cir.1969). See City of Mobile v. George, 253 Ala. 591, 45 So.2d *921 778 (1950). Indeed, the Restatement (Second) of Judgments § 38 (1982), sets forth this principle:
"Parties who are not adversaries to each other under the pleadings in an action involving them and a third party are bound by and entitled to the benefits of issue preclusion with respect to issues they actually litigate fully and fairly as adversaries to each other and which are essential to the judgment rendered." (Emphasis added.)
The cases relied upon by appellants, AAA Equipment & Rental, Inc. v. Bailey, 384 So.2d 107 (Ala.1980), and St. Paul Fire & Marine Ins. Co. v. Dowdell, 40 Ala.App. 141, 109 So.2d 151 (1959), do not conflict with this rule. In those opinions, res judicata and collateral estoppel did not apply, because the issues and claims were not contested by and between the parties. That the parties were aligned as co-parties was not determinative. As the Court held in AAA Equipment: "In this case the parties were not litigants against one another in the first action. As between themselves, they were not contestants." 384 So.2d at 110.
In Battle, however, appellee Carr and the appellants were contestants as to the issue which is the very subject of the present controversy: the funeral director's duties and obligations under the terms of the burial policy, particularly in an oversale situation. The federal district court, ordering changes in all Liberty National burial policies, specifically decreed in paragraph XVII G of its order, with respect to "oversales," that:
"Where other or additional services or merchandise are provided for the burial of the deceased insured and an `oversale' is thus made, the funeral director shall be required to allow only the retail value stated in said burial insurance policy in force on the insured as a credit against the charges and expenses if the existence of such insurance is made known to the contract funeral director prior to the burial of the deceased insured or within 30 days thereafter."
I believe there was sufficient evidence to authorize the trial judge here to conclude that the interests of the policyholder class and those of the funeral director class in "oversale" situations, as determined by the federal district court, were adverse; therefore, I would find the third element of res judicata is satisfied.
Was the subject matter of the prior and subsequent actions the same?
I am of the opinion, as was the trial judge, that they were, and res judicata bars the relitigation of all issues which were or could have been litigated in the prior action. Century 21 Preferred Properties, Inc. v. Alabama Real Estate Comm'n, supra, 401 So.2d at 768; Educators' Investment Corp. v. Autrey, supra, 383 So.2d at 538. Accord, Ray v. Tennessee Valley Authority, 677 F.2d 818 (11th Cir.1982). In its order dismissing the instant case below, the trial court specifically noted:
"The subject matter of the claims of the representatives of the policyholder class was based on the sale, issue and performance of the burial insurance policies issued or assumed by Liberty National. They sought to recover damages against the defendants for allegedly injuring them in the sale of funerals, funeral services, funeral merchandise and burial insurance relating thereto. The [federal district court] in Battle described [representatives of the policyholders] as claiming violations of the antitrust laws and also [stated that representatives of the policyholders] had invoked the pendente lite jurisdiction of the [federal district court] in counts of misrepresentation and fraud with respect to burial insurance policies issued or assumed by Liberty National. Plaintiffs charged Liberty National had engaged in deceptive sales tactics in the marketing of burial insurance policies and they sought compensatory and punitive damages for the fraud and deceit allegedly practiced on them."
*922 Based on these findings of fact by the trial judge, I am of the opinion that he could find that all the issues raised by appellants in the present action were or could have been determined in Battle; therefore, the trial judge could find that the subject matter of both actions was the same.
Even though I would uphold the trial court's determination that appellants' action is barred by the doctrine of res judicata, one of the basic reasons I dissent is that appellants are not foreclosed from other avenues of relief. Paragraph XXXIII of the court's decree in Battle provides that the federal district court retains jurisdiction over both the subject matter and the parties "for the purpose of enabling any of the parties to this action to apply to [that] court at any time for further orders and directions as may be necessary...." (Emphasis added.) I am also of the opinion that appellants may also seek relief from the final judgment in Battle, in the federal forum, under Rule 60(b), Fed.R.Civ.P. See e.g., Hallman v. Pennsylvania Life Ins. Co., supra: see also 2 Newberg on Class Actions § 2755(e) (1977). Even though I would affirm the trial court's judgment, I should not be understood as saying that I would have reached the same result that was reached in the federal class action. The adequacy of the notice is a substantial question. The construction of the burial policy in "oversale" situations raises serious questions, but I am not privy to all the agreements and compromises which were made to terminate that litigation. In any event, as I have already stated, as I read the order rendered in Battle, these plaintiffs, if aggrieved, may go to the federal forum and present their arguments to that court, and if unsuccessful in convincing that judge to grant them the relief to which they consider themselves entitled, they could appeal to higher federal courts.
Based on these reasons, I conclude that the trial court correctly refused to take jurisdiction of the claims here presented. Consequently, I must respectfully dissent.
NOTES
[*] Because of three recusals, this decision is by a majority of four of six justices sitting. See § 12-2-14, Code 1975.
[1] Brown Service provided funeral services and merchandise for the performance of burial insurance policies issued or assumed by Liberty National.
[2] See Battle v. Liberty National Life Ins. Co., 493 F.2d 39 (5th Cir.1974), for a background discussion of this class action litigation.
[3] "Should it be determined by the Court that members of the classes may elect to opt out and not be bound by the terms of the Consent Judgment and should such a substantial number of the members of either class determine to opt out as to indicate substantial disagreement with the terms and provisions of such Consent Judgment, the Court shall, upon petition of the Defendants, refuse to enter such Consent Judgment." Section III D., Order Consolidating Actions, September 22, 1977, Battle Funeral Home v. Liberty National Life Ins. Co., Civil Action No. 70-H-752-S.

This quoted language from the Federal Consolidation Order of September 22, 1977, is curious indeed in view of the court's later 23(b)(2) policyholder classificationa classification that does not include an "opt out" provisionand this in contradistinction to a 23(b)(3) classification for the funeral director class.
[4] Because the constitutional standard of reasonableness is measured by the nature and character of the claim asserted, the relief sought, and the resulting decree affecting the rights and obligations of the unserved class, a strong argument can be made for actual notice. Certainly, if these policyholders had been sued as defendants in a direct action for reformation of the contract of insurance (to the same extent as that here effected by the settlement decree), the rights of those insureds who did not receive personal service of process could not have been adjudicated; and this notwithstanding the insurer's claim that it did not have the policyholders' names and addresses or the means of ascertaining them. Indeed, arguably, the onesidedness of the terms of the settlement agreement, with respect to these policyholders, impugns the propriety of a Rule 23 certification of any class type.
[1] As the majority points out, the federal court found:

"The adequacy of representation of the classes, the notice, the opportunity to participate and to be heard, meet the requirements of due process and satisfy the notice requirements of Rule 23."