Edgar H. BATTLE, d/b/a Edgar H. Battle Funeral Home, et al., Plaintiffs,

v.

LIBERTY NATIONAL LIFE INSURANCE COMPANY, et al., Defendants.

Aubrey CARR, et al., Petitioners,

v.

James L. TAYLOR, as the Adm., etc.; James L. Taylor; Frances Louis Taylor Spence; Debra Taylor; Diane Taylor Stafford; Phillip Taylor and Gretta Taylor; and Annie Jo Elrod, as Executrix, etc.; Annie Jo Elrod and Gladys J. Carroll, Respondents.

No. CV70-H-752-S.

United States District Court, N.D. Alabama, S.D.

May 22, 1987.

Francis H. Hare, Jr., Hare Wynn Newell & Newton, Birmingham, Ala.

Edward L. Hardin, Jr., Birmingham, Ala.

John S.P. Samford, Birmingham, Ala.

Andrew Campbell, Leitman Siegal & Payne, Birmingham, Ala.

Jack Drake, Drake & Knowles, University, Ala.

David M. Ensley, Nolen & Ensley, Fayette, Ala.

J. Pelham Ferrell, Ferrell & Bennett, Phenix City, Ala.

Richard H. Gill, Copeland Franco Screws Gill, Montgomery, Ala.

O. William Adams, III, Birmingham, Ala.

John Crawley, Troy, Ala.

Edward Still, Birmingham, Ala.

J. Richard Carr, Attalla, Ala.

Alto V. Lee, III, Lee & McInish, Dothan, Ala.

Duncan Manley, Rives & Peterson, Birmingham, Ala.

Fred D. Gray, Gray Seay & Langford, Tusketee, Ala.

Ralph B. Tate, Spain Gillon Riley Tate & Etheredge, Birmingham, Ala.

Ira Burleson, Birmingham, Ala.

Edmon McKinley, Thomasville, Ala.

Ernest C. Hornsby, Hornsby & Schmitt, Tallassee, Ala.

Don B. Long, Jr., William D. Jones, III, Johnston Barton Proctor Swedlaw & Naff, Birmingham, Ala.

George R. Stuart, III, Birmingham, Ala.

Frank J. Tipler, Andalusia, Ala.

C. Neal Pope, Phenix City, Ala.

Warren B. Lightfoot, William R. Lucas, Jr., Adam K. Peck, Bradley Arant Rose & White, Birmingham, Ala.

Thomas A. Ansley, Haskell Slaughter & Young, Birmingham, Ala.

Jimmy E. Alexander, Athens, Ala.

John W. Parker, Tonsmeire McFadden & Riley, Mobile, Ala.

William C. Barclift, Liberty Nat. Life Ins. Co., Birmingham, Ala.

George P. Walthall, Jr., Walthall & Cleveland, Prattville, Ala.

James E. Clark, Birmingham, Ala.

## MEMORANDUM OF DECISION

HANCOCK, District Judge.

This cause is before the court on the November 6, 1986 motion of James L. Taylor and others (respondents) to dissolve the March 26, 1985 preliminary injunction and on the February 4, 1987 petition of Liberty National Life Insurance Company and Aubrey Carr (petitioners) to make that injunction permanent. Under the February 6, 1987 order the motion and petition were heard and submitted at the March 12, 1987 hearing. The entire body of evidence in support of and in opposition to the motion and petition was presented by affidavits and exhibits, and both respondents and petitioners filed several briefs with the court. It is this court's decision, following full consideration and review of the various issues to be resolved, that the preliminary injunction issued March 26, 1985, should in essence be made permanent. The following exposition of the *Battle* and associated cases, as well as the reasoning used in the instant decision, will hopefully illuminate the quagmire of litigation in which the court and parties are submerged, illustrating the complexity, seriousness and all consuming nature of the issues which have been, are, and necessarily will in the future continue to be in litigation in this court.

*Edgar H. Battle, et al., v. Liberty National Life Ins. Co., et al.*, CV70-H-752-S, was filed in this court on October 6, 1970. It was a suit by owners of funeral home businesses in Alabama against the defendants seeking damages and other relief for alleged violations of the federal antitrust statutes. *W. Adrian Holman, et al., v. Liberty National Life Ins. Co., et al.*, CV76-H-0813-S, was filed in this court on June 11, 1976. It also was a suit by owners of funeral home businesses in Alabama against the same defendants claiming the same violations and requesting the same relief as in *Battle*. *Holman* purported to

be a class action on behalf of all persons and entities owning funeral home businesses in Alabama from June 29, 1954 through its disposition date. *James A. Campbell, et al., v. Liberty National Life Ins. Co., et al.*, CV72–H–569–S, was filed in this court on June 26, 1972, as a class action on behalf of all holders of burial and/or vault insurance policies issued, assumed, or reinsured by Liberty National. In substantially the same language as *Battle, Campbell* claimed alleged violations of the federal antitrust laws and also invoked the *pendente lite* jurisdiction of this court in counts of misrepresentation and fraud with respect to burial and vault insurance policies issued, assumed, or reinsured by Liberty National. Each of these suits complained of federal antitrust violations by Liberty National and Brown-Service Funeral Homes Company, Inc. in the sale, issue and performance of the insurance policies in question in the State of Alabama.

In September, 1977, counsel for the named plaintiffs and plaintiff-intervenors in these three suits and counsel for the defendants entered into an Agreement in Principle for Disposition of Litigation and presented the same to the court. All counsel for the named parties moved for consolidation of the three suits to accomplish the disposition of the litigation in accordance with the settlement agreement, and the cases were consolidated under the style *Battle v. Liberty National Life Ins. Co.*, CV70–H–752–S, on September 22, 1977. Following a hearing on the settlement agreement, this court tentatively approved the agreement and, as there had been no formal order concerning the maintainability of the suits as class actions, established two temporary settlement classes to effectuate the settlement agreement. The first temporary class consisted of all owners of funeral home businesses in Alabama at any time from June 29, 1954 until the date of the order (September 22, 1977). This court specifically found that the prerequisites of Rule 23(a) and of Rule 23(b)(3) were met by this first class, that the class representatives adequately protected the interests of all class members, that all class members'

names and addresses could be ascertained through reasonable effort, and that the best notice practicable for them was written notice by mail. The second temporary class was composed of "all insureds under outstanding burial or vault insurance policies issued, assumed, or reinsured by defendant Liberty National Life Insurance Company and all other persons claiming any right, title or interest in or benefit under any such policy." (September 22, 1977 order). This court specifically found that this second class met the prerequisites of Rule 23(a), including the adequacy of representation, that it also met the prerequisites of Rule 23(b)(2), that the number of class members exceeded one million, and that members' names could not be ascertained through reasonable effort. The best notice practicable for this second class was determined to be written notice delivered by agents of Liberty National as provided in the September 22, 1977 order.

On December 9, 1977, the consolidated action came on for a hearing on the settlement agreement after notice to the parties. On January 6, 1978, a final judgment was entered which made permanent the temporary classes established on September 22, 1977, and which found, *inter alia*, that: (1) this court had subject matter and in personam jurisdiction over all issues and parties, (2) the terms and provisions of the Settlement Agreement were reasonable and should be approved (citing various advantages to all parties), (3) all claims asserted or which might have been asserted by the parties or class members should be dismissed with prejudice, (4) *Johnson v. Liberty National Life Ins. Co.*, # 5178, then pending in the Circuit Court of Conecuh County, Alabama, involved the same policyholder class and common questions of law and fact as involved in *Battle* and should be dismissed with prejudice, and (5) the best practicable notice to all parties and class members had been attained by the methods ordered on September 22, 1977, and by widespread multimedia news coverage of the settlement agreement and hearings.

The following excerpt from this court's March 26, 1985 order of preliminary injunction (pp. 5–7) illuminates the magnitude of effort that culminated in the January 6, 1978 Final Judgment.

As the record quite clearly establishes, the January 6, 1978 FRCP 54(b) Final Judgment was the culmination of seven years of litigation in state court and in federal court of very complex and interdependent issues between parties with positions which often conflicted with one another. These issues include: (1) our nation's policies embraced in the federal antitrust laws (with regard to which this court's jurisdiction was initially invoked in this action on October 6, 1970), including specifically the provisions of a final judgment entered in this court on June 29, 1954, in an antitrust action styled *United States of America v. Liberty National Life Insurance Company, et al.,* Civil Action No. 7719; (2) the rights and responsibilities of some 300 owners and operators of over 400 funeral homes located throughout the state; (3) the rights of over 1,000,000 holders of a variety of burial and vault insurance policies issued, assumed or reinsured by Liberty National, the obligations of Liberty National thereunder, and the various options available to Liberty National to discharge those obligations, e.g., the use of existing funeral homes in the state to service indirectly the policies or the establishment by Liberty National of outlets throughout the state to service directly the policies; and (4) the rights and responsibilities between Liberty National and the over 300 funeral directors throughout the state (authorized and unauthorized) with regard to the servicing of the policies of insurance and with regard to the opportunity to service them. The basic resolution of those issues was accomplished by the Final Judgment entered on January 6, 1978, although the case in which those issues were resolved was not closed since the court expressly "retained jurisdiction of the subject matter and all parties hereto for the purpose of enabling any of the parties to this action to apply to the Court at any time

for further orders and directions as may be necessary or appropriate for the construction or implementation of the terms of this Final Judgment." Paragraph XXXIII of the January 6, 1978 Final Judgment. At the time of the entry of the Final Judgment, over 30 attorneys from over 20 separate law firms were involved in the case, representing far in excess of 1,000,000 parties. Four of the attorneys were former presidents of the Alabama Bar Association (two of which represented the policyholder class of plaintiffs and whose representation and the adequacy thereof may be questioned by the filing of the Taylor, Elrod and Carroll suits). During the seven years preceding the entry of the January 6, 1978 Final Judgment many weeks of court hearings were conducted which are recorded on over 2,300 pages of transcripts and during which some 200 exhibits were introduced; nearly 200 separate depositions were taken in all areas of the state, which depositions comprise over 18,000 pages and include more than 1,800 exhibits; certain issues raised in the state court litigation ultimately resolved by the January 6, 1978 Final Judgment were heard by the Alabama Supreme Court; and intermediate issues in the federal court litigation ultimately resolved by the January 6, 1978 Final Judgment were heard by the United State Court of Appeals for the Fifth Circuit. This case (including the cases consolidated with it and the state case resolved by it) has been complex, time consuming, and expensive; it has been important to all the parties and the public as well. The fact that such a case can be concluded by agreement is a tribute to the diligence and sense of fairness of the attorneys litigating the earlier mentioned complex and interdependent issues. That work product, built block by block, should not lightly be torn down. If, for whatever reason, there is to be an effort to unravel the settlement, *that effort must be pursued only in the court where the settlement was constructed,* with all the parties to the settlement having the opportunity to participate in

the proceedings, and with, of course, appellate review in the only proper reviewing court.

Only one motion to reconsider the January 6, 1978 Final Judgment was filed, and though a notice of appeal was filed by the objectors-intervenors, the appeal was dismissed on motion of the appellants on March 9, 1978. The Circuit Court of Conecuh County complied with the January 6, 1978 order by dismissing *Johnson* on March 20, 1978, from which no appeal was taken.

In June, 1980, Liberty National and Brown-Service Funeral Homes petitioned this court under its retained jurisdiction over the *Battle* Final Judgment to enforce the same against several funeral directors and funeral homes. This renewed litigation added to the record two pages of docket entries, 10 depositions, numerous briefs, pleadings and discovery requests, and 3 days of court hearings with oral testimony. In September, 1981, petitions were made to this court to amend certain funeral service contracts. The aspect of this litigation presently before the court began in November, 1984, and has been consistently before the court since that time, adding 5 pages of docket entries to a docket sheet which is now 54 pages long (and growing), numerous court orders, countless hours of attorney time, and a myriad of evidentiary filings, discovery requests, etc. As late as April, 1987, this court has been called upon under its retained jurisdiction to remedy alleged violations of the January 6, 1978 order, to clarify basic rights and responsibilities of all parties and perhaps to restructure the practical method by which, at least in many areas of the state, Liberty National is required or permitted to discharge its policy obligation. The financial expense to the parties since 1970 in attorneys' fees alone is astronomical in this ongoing litigation.

The court has before it currently two requests with regard to the March 26, 1985 preliminary injunction—one to dissolve the injunction—the other to make the injunction permanent. The March 26, 1985 injunction, though addressed only to two state court actions, affects four separate cases at this time (the respondents here include the plaintiffs in all four cases). In 1983, two suits were filed in the Circuit Court of Limestone County, Alabama, against Liberty National and Aubrey Carr, a funeral home operator, by the administrator and heirs of James Taylor and Laura Taylor, docketed as CV83–23J and CV83–85J. The allegations centered around what is owed under the burial policies owned by the Taylors and under the "oversale" provision established by custom and the *Battle* Final Judgment. The *Battle* Final Judgment specifically addressed, in detail, these issues and this court specifically retained jurisdiction over the *Battle* litigation in anticipation of a future need to refine and define what the policy provides for and what is owed if the policyholder wishes something different. One must review the entire history of these policies (written since the 1930s), the historical pricing methods of funeral directors in Alabama, recent Federal Trade Regulations concerning pricing in this area, the traditional method by which Liberty National performed these policies, and the entire contents of four, five-drawer filing cabinets containing the *Battle* court file in order to obtain the necessary understanding to adjudicate such issues effectively. The state Circuit Judge in Limestone County dismissed the Taylors' suits based on the doctrine of res judicata stating that the Taylors were members of the Rule 23(b)(2) policyholder class in the *Battle* litigation and as such were estopped to bring their actions. The Taylors appealed to the Alabama Supreme Court and in a plurality opinion dated November 21, 1984, with two dissents, that court reversed the circuit court's decision on what it termed due process grounds. *Taylor v. Liberty National Life Ins. Co.*, 462 So.2d 907 (Ala.1984). Only on the basis of the very limited record developed at the trial court level, the Alabama Supreme Court decided that this court improperly certified the policyholder class as a Rule 23(b)(2) class, stating that the class should have been a 23(b)(3) class because the Alabama Supreme Court felt that the policyholder class was being un-

fairly treated. The Alabama Supreme Court determined that the Taylors had been taken advantage of, that the policyholder class was surreptitiously created, and that property was taken by this court from the class so as to require a 23(b)(3) certification. [For a provocative review of *Taylor*, see *Recent Decisions*, 36 Ala.L. Rev. 1123 (Summer 1985)]. The *Taylor* complaints and the *Taylor* decision both indicate that the point of agitation was the "oversale" provisions of the policy under the 1978 *Battle* Final Judgment. There were several other cases filed in Limestone County Circuit Court in 1984 based on the same burial and vault policies and founded, per their complaints, on the *Taylor* decision. Two of these cases, *Carroll v. Liberty National Life Ins. Co.* and *Elrod v. Liberty National Life Ins. Co.*, were filed as class actions and made specific attack on the 1978 *Battle* Final Judgment. These two cases were removed to this court on December 7, 1984, and are pending here awaiting the outcome of the motion and petition now in question; the named plaintiffs in those cases are named respondents here. The *Taylor* case, upon remand from the Alabama Supreme Court to the state trial court and before the issuance of this court's injunction, was amended also to assert class action status.

This court, in enjoining the Taylors from prosecuting their suits in the Circuit Court of Limestone County, stated the following in its March 26, 1985 order of Preliminary Injunction:

Petitioners seek the requested injunctive relief as being necessary and in aid of this court's retained jurisdiction over the subject matter and all parties hereto and to protect or effectuate this court's Final Judgment entered January 6, 1978. Thus petitioners argue that 28 U.S.C. § 2283 does not prohibit the requested injunction. Petitioners also seek the requested injunctive relief as necessary or appropriate in aid of this court's jurisdiction and agreeable to the usages and principles of law pursuant to the express authority contained in 28 U.S.C. § 1651. Respondents by way of their answer and their brief question this court's subject matter jurisdiction. Respondents argue that this court's exercising jurisdiction is tantamount to its reviewing a final determination of a state court in judicial proceedings. The court does not agree. In the first place, there is no final determination in the state court judicial proceedings sought to be enjoined; those proceedings are on-going. More importantly, any injunction properly issued by this court would not be a "review" of a state court proceeding but would be issued solely because it is necessary or appropriate in aid of this court's jurisdiction and/or because it is necessary to protect or effectuate this court's judgment. The court finds that it has jurisdiction to entertain the petition and, if appropriate, to grant the requested relief.

This court is still firmly of the opinion that 28 U.S.C. § 2283 does not proscribe a permanent injunction under the circumstances presented here. As the Supreme Court stated in *Younger v. Harris*, 401 U.S. 37, 43–46, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971), the Anti-Injunction Act places limits on a federal court's ability to enjoin state court proceedings, directly or indirectly. The notions of comity and "our federalism" are strong and necessary ideals which help separate and govern our dual court systems. The *Younger* decision also noted in dicta that an injunction, if it is available under § 2283, must meet the traditional equitable principles of inadequacy of a remedy at law and irreparable injury. This court is not prohibited from entering the requested injunction in this antitrust case so long as it remains within the boundaries established by § 2283 and traditional equitable principles. See *Woods Exploration & Producing Co. v. Aluminum Co. of America*, 438 F.2d 1286, 1311–16 (5th Cir. 1971), cert. denied, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972). This court will enter this injunction within those boundaries and with the understanding that this decision was not lightly reached, or entered in contravention of the concepts of comity of federalism. See *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977). With-

out the requested permanent injunction, this court cannot proceed to discharge its responsibilities under the January 6, 1978 Final Judgment, or continue to adjudicate matters addressed to it under its retained jurisdiction. The parties to the 1978 Final Judgment will be irreparably harmed and subjected to conflicting orders without an adequate remedy at law if this court does not so exercise its discretion.

The respondents' principal argument, as stated in their brief in opposition to the petition for permanent injunction, is one based on the *Taylor* decision. It is, in synopsis, that this court cannot enjoin their prosecution of several state court suits because the *Battle* Final Judgment is not res judicata to them. They argue that the relitigation exception found in § 2283 does not apply since they were, as found by the Alabama Supreme Court, denied due process in three ways: this court incorrectly certified the policyholder class as a 23(b)(2) class; the respondents did not receive actual notice; and the respondents were not adequately represented during the *Battle* litigation. Without comment at this point on the validity of these arguments, the arguments are irrelevant to the issues at hand. It is unnecessary to decide whether this court was correct in its findings, conclusions, and directions in the *Battle* Final Judgment in order to determine if the facts and circumstances of this case meet the standards required under § 2283.

The respondents argue that the reversal of *First Alabama Bank of Montgomery v. Parsons Steel, Inc.*, 747 F.2d 1367 (11th Cir.1984), which this court cited in its preliminary injunction order, requires the dissolution of the injunction. The Supreme Court in *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986), held that the relitigation exception found in § 2283 was not a pro tanto amendment to the Full Faith and Credit Act, 28 U.S.C. § 1738. But respondents' reliance on *Parsons* is misplaced as *Parsons* does not preclude this court from entering an injunction. *Parsons* had a factual background involving parallel state and federal suits which were litigated at the same time, which is not the case here.

The *Taylor* complaint was not filed until six years after the *Battle* Final Judgment was entered. The Supreme Court in *Parsons* predicated its decision on the existence of a final judgment by a state court which would have been appealable and was entitled to full faith and credit. There is no such final state judgment at stake here; the *Taylor* decision was a reversal of an entry of summary judgment and the action was remanded to the state trial court for trial. The entry of an appealable order is considered a prerequisite to invocation of the Full Faith and Credit Act and such was the basis of the decision in *Parsons*. *Marrese v. American Academy of Orthopoedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (citing *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75 (1984)); 19 Fed.Proc., L.Ed. § 47:114 (1983). The *Taylor* decision was not a "final" decision that would be entitled to full faith and credit and therefore does not preclude this court from enjoining the prosecution of those suits under § 2283. See generally the July 17, 1986 unpublished opinion in *First Alabama Bank of Montgomery v. Parsons Steel*, CV83V-181-N (M.D.Ala.1986) (on remand) [Available on WESTLAW, DCT database]. A most important distinction between *Parsons* and this court's preliminary injunction is the fact that the *Parsons* decision relied solely on the relitigation exception in § 2283, whereas this court did not and does not so limit its reliance. As stated previously, the injunction here will stand under either of the latter two exceptions to § 2283 and the general circumstances involved. Also, and quite significantly, *Parsons* did not involve an ongoing, complex, class action, federal antitrust litigation; it involved simple litigation which had ended in a final judgment and the federal court had not retained jurisdiction for resolution of further necessary and significant supplemental issues.

The respondents additionally base their arguments for dissolution of the injunction on *Vendo Co. v. Lektro-Vend Corp*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), suggesting that the second excep-

tion to § 2283, the "in aid of its jurisdiction" exception, only applies to in rem jurisdiction. This court does not so read the *Vendo* decision. In *Vendo* parallel law suits were again involved. There the party requesting the injunction had lost on final appeal in the state court and then sought to enjoin the collection of the judgment. The federal district court, which had not reached a decision on the merits, held that the Clayton Antitrust Act provided an express statutory exception to § 2283 and issued the injunction. The Supreme Court held that no such express exception could be read into the Clayton Act and continued to state that the "in aid of its jurisdiction" exception incorporated the historical in rem exception. The Court did not limit that exception to in rem cases but stated that the decision to enjoin must turn on the facts and circumstances of each case. The Supreme Court simply found insufficient circumstances and facts in *Vendo,* but the facts and circumstances now before the court squarely support an injunction.

In *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), the Supreme Court stated the following in explaining the necessary factual situation required to exist before entering an injunction against a state court action:

> "... if the District Court does have jurisdiction, it is not enough that the requested injunction is related to that jurisdiction, but it must be 'necessary in and of' that jurisdiction.... Both exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."

*Id.,* at 295, 90 S.Ct. at 1747. See also, *In Re Corrugated Container Antitrust Litigation,* 659 F.2d 1332 (5th Cir.1981), where the court affirmed an injunction against settlements in related state court actions on the basis of the second and third exceptions to the Anti-Injunction Act, holding:

The multidistrict trial court perceived that the actions of the appellants in pursuing substantially similar state law claims in the South Carolina court would be a challenge to that jurisdiction. We agree. As the Supreme Court has explained, this exception to the Anti-Injunction Act means that injunctions may be issued where "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coastline R.R. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234, 245 (1970) (dicta). This complicated antitrust action has required a great deal of the district court's time and has necessitated that it maintain a flexible approach in resolving the various claims of the many parties.... [The state court] limitation on the terms of settlement would clearly interfere with the multidistrict court's ability to dispose of the broader action pending before it.

*Id.,* at 1334–35.

This court can conceive of no set of facts more appropriate under the language of § 2283 and the Supreme Court decisions for the institution of an injunction than the set of facts and circumstances before it now. Any state court judgment, or even the active prosecution of such an action, in the *Taylor, Elrod,* or *Carroll* cases, or any similar case, would directly, and with irreparable injury, interfere with this court's ability to supervise and dispose of the *Battle* litigation and would remove any flexibility this court might exercise in reaching a just solution or monitoring the actions of the parties. The court in *In Re Baldwin-United Corp.,* 770 F.2d 328 (2nd Cir.1985), held that an injunction of various state court suits was proper in order to protect settling defendants in an ongoing class action involving securities litigation. The court found that the injunctions provided the district court with the flexibility and control to supervise the litigation and to avoid conflicting results, added expense, etc. The *Baldwin* court concluded:

In effect ... the district court had before it a class action proceeding so far advanced that *it was the virtual equivalent of a res* over which the district court required full control.

*Id.* at 337 (emphasis added).

This court likewise finds that the injunction provides it with the necessary flexibility and control to supervise the *Battle* litigation which is "the virtual equivalent of a res." Any state court judgment would destroy the settlement worked out over seven years, nullify this court's work in refining its Final Judgment over the last ten years, add substantial confusion in the minds of a large segment of the state's population, and subject the parties to added expense and conflicting orders.

This court further finds support for its decision in past cases involving federal desegregation orders. See, for example, *Swann v. Charlotte-Mecklenburg Board of Education*, 501 F.2d 383 (4th Cir.1974). The need to enjoin conflicting state court proceedings arises because the jurisdiction of this court in this complex antitrust action, especially in light of the ongoing litigation under the court's retained jurisdiction, is analogous "to that of a court in an in rem action or in a school desegregation case, where it is intolerable to have conflicting orders from different courts." 17 Wright, Miller & Cooper, *Federal Practice & Procedure* § 4225 at 105 n. 8 (Supp. 1985).

... where it is apparent that a pending state suit could affect compliance with previous federal court orders relating to school desegregation, injunctive relief is proper as being necessary in aid of the federal court's jurisdiction or to protect or effectuate its judgments. The exceptions to 28 U.S.C.A. § 2283 allowing a federal court to enjoin state court proceedings where necessary in aid of its jurisdiction or to protect or effectuate its judgments are controlling where [state action] would undermine and interfere with prior orders of the court and limit its flexibility in dealing with the multiple and complex problems arising in the wake of school desegregation.

6 Fed. Proc., L.Ed. § 11:59 pp., 80–81 (1982) (footnotes omitted). To the same effect is *United States v. District of Columbia*, 654 F.2d 802 (D.C.App.1981), where the court had approved a consent decree concerning the disposal of sewage sludge and retained jurisdiction to enforce its decree. The Circuit Court of Appeals for the D.C. Circuit held that an injunction blocking subsequent related state court actions was proper under both the second and third exceptions to the Anti-Injunction Act. The decision this day being confirmed is also supported, indeed compelled, by the exclusive nature of this court's jurisdiction over the subject matter of this federal antitrust action. See *Capital Service, Inc. v. NLRB*, 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954); *T. Smith & Son, Inc. v. Williams*, 275 F.2d 397, 404, n. 22 (5th Cir.1960).

This court also finds support in the All Writs Act, 28 U.S.C. § 1651(a), which states "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This is not to suggest that this statute is an "express" statutory exception under § 2283, but, if the injunction is otherwise proper under § 2283, it does provide statutory support for the use of an injunction to accomplish retaining control over the *Battle* litigation. As it was permissible, and here necessary, to retain jurisdiction to allow modification, construction, and execution of its FRCP Rule 54(b) judgment [see *Aluminum Co. of America v. United States*, 382 U.S. 12, 86 S.Ct. 24, 15 L.Ed.2d 1 (1965); *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968)], this court must be allowed to exercise that jurisdiction without interference from other court actions.

Based on all the foregoing, this court has no rational choice other than entering a permanent injunction precluding the continued prosecution of the *Taylor, Elrod* and *Carroll* cases. This court, under its retained jurisdiction, has specific and very important responsibilities which must be carried out and which cannot tolerate interference from collateral attacks or from con-

flicting court proceedings or judgments. The *Battle* litigation is of such complexity and magnitude that it affects approximately one-fourth of the population of the State of Alabama and those involved are continuously affected by proceedings conducted under the retained jurisdiction in the *Battle* Final Judgment. This court has made many findings of fact and conclusions of law which must stand until modified by this court or the Eleventh Circuit Court of Appeals. Respondents are members of the *Battle* policyholder class; that class was certified—properly certified—as a FRCP Rule 23(b)(2) class; that class was given what the court found to be the best practicable notice, the court expressly concluding in the Final Judgment of January 6, 1978 that approximately 90% of the policyholder class in Alabama received notice; such notice was even sufficient to satisfy the stringent notice requirements for a FRCP Rule 23(b)(3) class; and unless the Final Judgment is void for reasons such as fraud practiced upon the court, respondents are bound by the Final Judgment unless respondents were not adequately represented. *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir.1973). The March 26, 1985 preliminary injunction made it plain that the only appropriate method by which respondents can challenge at this late date the *Battle* Final Judgment is to file in this court (1) a motion under FRCP Rule 60(b) or (2) an independent action predicated upon a claim of inadequacy of representation of the policyholder class or upon a claim of fraud on this court. Of course, all persons whose interests may be affected by such proceedings must be included therein. For over two years respondents have elected not to pursue either route. It is time to make the preliminary injunction permanent, but that injunction will not proscribe respondents from taking hereafter either of the two routes outlined for them. The permanent injunction will be issued by separate order.

### ORDER OF PERMANENT INJUNCTION

In accordance with the Memorandum of Decision this day entered, it is hereby

ORDERED, ADJUDGED and DECREED that respondents James L. Taylor, as the Administrator of the Estates of James Jackson Taylor and Laura F. Taylor, deceased; James L. Taylor; Frances Louise Taylor Spence; Debra Taylor; Diane Taylor Stafford; Phillip Taylor and Gretta Taylor; and Annie J. Elrod, as Executrix of the Estate of David A. Elrod, deceased; Annie Joe Elrod; and Gladys J. Carroll; and their agents, servants, employees, attorneys and all persons acting on their behalf, as well as all persons in active concert or participation with them who receive actual notice of this order are, subject to further orders from this court or the United States Court of Appeals for the Eleventh Circuit, hereby PERMANENTLY RESTRAINED and ENJOINED from taking any further action to prosecute the cases of *James L. Taylor, et al. v. Liberty National Life Ins. Co., et al.*, CV83–23J; *James L. Taylor, et al. v. Liberty National Life Ins. Co., et al.*, CV83–85–J, currently pending in the Circuit Court of Limestone County, Alabama, or *Annie J. Elrod, et al. v. Liberty National Life Ins. Co.*, CV84–H–3061–S, *Gladys J. Carroll, et al. v. Liberty National Life Ins. Co.*, CV84–H–3060–S, currently pending in the United States District Court for the Northern District of Alabama. This injunction does not prohibit any party to the *Edgar H. Battle, et al. v. Liberty National Life Ins. Co., et al.*, CA70–H–752–S, Final Judgment dated January 6, 1978, or other person or party with appropriate standing from attacking that Final Judgment or seeking its alteration or withdrawal by way of a proper FRCP Rule 60(b) motion in the *Battle* litigation; or from filing an independent action in this court directly attacking the *Battle* Final Judgment; or from filing a proper petition for court action under the *Battle* Final Judgment or for modification or withdrawal of this injunction; or from prosecuting an appeal of this injunction.

The clerk of court is directed to place a copy of this order and the accompanying memorandum of decision in the files numbered CV84–H–3060–S and CV84–H–3061–S and to mail two copies of the same to the clerk of court for the Circuit Court

of Limestone County, Alabama, for inclusion in files numbered CV83–23J and CV83–85J.