**Edgar H. BATTLE, d/b/a Edgar H. Battle Funeral Home, et al., Plaintiffs,**

v.

**LIBERTY NATIONAL LIFE INSURANCE COMPANY, et al., Defendants,**

**Aubrey Carr, et al., Petitioners–Appellees,**

**James L. Taylor, as the Adm., etc., et al., Respondents–Appellants.**

**No. 87–7408.**

United States Court of Appeals, Eleventh Circuit.

July 17, 1989.

---

Jimmy E. Alexander, Alexander, Corder & Plunk, Athens, Ala., William D. Jones, III, Johnston, Barton, Proctor, Swedlaw & Naff, Don B. Long, Jr., Birmingham, Ala., for plaintiffs.

William R. Lucas, Jr., Bradley, Arant, Rose & White, Warren B. Lightfoot, William G. Somerville, III, Birmingham, Ala., for Liberty Nat. Life Ins. Co., et al.

George R. Stuart, III, Birmingham, Ala., for Edgar H. Battle, et al.

Andrew P. Campbell, Leitman, Siegal, Payne & Campbell, P.C., Birmingham, Ala., for Aubrey J. Carr.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and HENDERSON, Senior Circuit Judge.

RONEY, Chief Judge:

The issue in this case is whether a federal court may enjoin these state court plaintiffs from pursuing claims in state court that are substantially similar to claims settled by final judgment in a federal class action.[1] We hold that the injunction entered by the district court was proper, under two exceptions to the Anti–Injunction Act, 28 U.S.C.A. § 2283.[2]

## Background

In 1978, the District Court for the Northern District of Alabama entered final judgment pursuant to a settlement agreement in *Battle v. Liberty Nat'l Life Ins. Co.,* a consolidation of three class actions alleging federal antitrust violations in Liberty's and Brown–Service Funeral Home Co., Inc.'s issuance, sale and performance of certain burial and/or vault insurance policies. The settlement was the result of seven years of litigation in both federal and state courts. The court made permanent two classes: (1) all owners of Alabama funeral homes from June 29, 1954, until September 22, 1977, certified as a class under 23(b)(3), requiring individual notice of the settlement; and (2) all insureds with burial or vault policies, certified as a 23(b)(2) class. For the second

---

1.
The following is a brief chronology of this case.

Oct. 1970: *Battle v. Liberty Nat'l Life Ins. Co.* Suit filed in federal court by owners of funeral homes in Alabama alleging federal antitrust violations in sale, issuance and performance of burial/vault insurance policies.

June 1972: *Campbell v. Liberty Nat'l Life Ins. Co.* Class action filed in federal court on behalf of holders of burial/vault insurance policies, also alleging federal antitrust violations.

June 1976: *Holman v. Liberty Nat'l Life Ins. Co.* Class action filed in federal court by funeral home businesses, alleging same violations and requesting same relief as *Battle.*

Sept. 22, 1977: Cases consolidated under style *Battle v. Liberty Nat'l Life Ins. Co.* Court gives tentative approval to settlement agreement, establishes two settlement classes.

(1) All owners of funeral homes in Alabama from June 29, 1954 until Sept. 22, 1977. [23(b)(3) class].

(2) All insureds under burial or vault policies. [23(b)(2) class]. District court found that class exceeded 1 million persons and names could not be ascertained through reasonable effort. Best notice determined to be written notice delivered by agents of Liberty National.

Jan. 6, 1978: Final judgment entered. Court retains jurisdiction.

(1) Temporary classes made permanent.

(2) All claims asserted or which might have been asserted should be dismissed with prejudice.

(3) *Johnson v. Liberty Nat'l Life Ins. Co.,* a case pending in Conecuh Co., Alabama, found to involve same policyholder class and should be dismissed with prejudice.

March 1978: State court dismisses *Johnson.* No appeal taken.

Feb. 1983: Heirs/administrator of James and Laura Taylor file two suits in state court against Liberty National and a funeral home operator concerning burial policies. State trial court dismisses suits as *res judicata.*

Nov. 1984: Alabama Supreme Court reverses trial court dismissal, holding that the Taylors were denied due process in 1978 federal judgment. *Taylor v. Liberty Nat'l Life Ins. Co.,* 462 So.2d 907 (Ala.1984). Alabama Supreme Court determined that federal district court had improperly certified the class under 23(b)(2), instead of (b)(3), and that the policyholder class was unfairly treated.

Based on *Taylor,* two other cases filed as class actions, directly attacking the 1978 *Battle* final judgment. *Carroll v. Liberty Nat'l* and *Elrod v. Liberty Nat'l.*

Dec. 1984: *Carroll* and *Elrod* removed to federal court.

Mar. 26, 1985: District court issues preliminary injunction enjoining Taylors from prosecuting their suits in state court.

May 27, 1987: District court issues permanent injunction, prohibiting continued prosecution of *Taylor, Elrod,* and *Carroll.*

2.
Section 2283 provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

class, the court in its previous order had determined that the number of members exceeded 1 million and that the best notice was to be written notice delivered by Liberty agents. In its final judgment, the court concluded that the written notice delivered by Liberty home agents, combined with intense media coverage of the proposed settlement, had served to actually notify about 90% of the policyholder class.

The final judgment established the rights and obligations of about 300 owners of some 400 funeral homes in Alabama and the rights under the burial/vault policies of approximately 1 million policyholders. It covered such details as increasing the merchandise allowance for metal caskets from $75 to $95 and providing for reimbursement to the funeral director, up to $15, for the cost of a child's burial garment.

The court explicitly retained jurisdiction over the case, stating in the judgment:

> This Court retains jurisdiction of the subject matter and all parties hereto for the purpose of enabling any of the parties to this action to apply to the Court at any time for further orders and directions as may be necessary or appropriate for the construction or implementation of the terms of this final Judgment.

Under this retained jurisdiction, the court repeatedly has been asked to settle disputes concerning the application of the judgment to particular burial policies.

In February 1983, the family of James and Laura Taylor filed suit in state court against Liberty and Aubrey J. Carr, a funeral director, alleging a failure to provide the merchandise and services required under their burial policies. In each case, the family had rejected the policy casket and had selected a more expensive casket. The funeral director billed for the funeral services but allowed, or offered to allow, credit in the amount of the retail value stated in the burial policies. The Taylor plaintiffs alleged that Liberty had breached its contract for money due under the burial policies, as well as fraud and bad faith in performance.

The circuit court found on summary judgment that the Taylor actions were barred by *res judicata* and collateral estoppel, in light of the *Battle* final judgment. The Alabama Supreme Court reversed, holding that due process precluded binding the Taylors by the *Battle* final judgment because (1) the policyholder class was improperly certified as a 23(b)(2) class; (2) the Taylors did not receive either actual or constructive notice under the provisions established by the district court; and (3) the Taylors were not adequately represented. *Taylor v. Liberty Nat'l Life Ins. Co.*, 462 So.2d 907 (Ala.1984). On remand, the Taylors amended the complaint to assert a claim on behalf of two classes: all policyholders who had died since the final judgment was entered, and all burial and vault policyholders.

In March 1985, the district court issued a preliminary injunction forbidding the plaintiffs in the *Taylor* suit from continuing to prosecute their case. In May 1987, the district court permanently enjoined the Taylors, and the plaintiffs in two other state court suits raising similar class action claims, *Carroll* and *Elrod*, from pursuing these actions.

Federal law permits a district court to enjoin state court actions "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C.A. § 2283. Both of these situations are present in this case.

### "In aid of its jurisdiction"

The United States Supreme Court has stated that the "necessary in aid of" jurisdiction exception to the general ban on federal injunctions is properly invoked in order "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970).

The *Battle* final judgment involved the resolution of approximately seven years of litigation over complicated antitrust issues. In reaching judgment, sever-

al weeks of court hearings were conducted, consuming some 2,300 pages of transcript and review of about 200 exhibits. Almost 200 depositions were taken all over the state totalling some 18,000 pages. It was estimated that about 25 percent of the Alabama population was affected by this litigation. The judgment established the rights of about 2.5 million policies, more than 1 million policyholders and about 300 funeral home operators in the state. Further, the district court has been called on repeatedly to resolve ensuing disputes over the terms of the judgment. Certainly the district court must be able to maintain a flexible approach in resolving the various claims. These state court suits, class actions which on their face challenge the propriety of the *Battle* judgment, can only undermine the district court's continuing jurisdiction over the case.

In an analogous case, *United States v. American Soc. of Composers, Authors and Publishers*, 442 F.2d 601 (2d Cir.1971) (ASCAP), the court upheld an injunction prohibiting a state court challenge to a proposed fund distribution pursuant to a 21–year–old federal final judgment because it interfered with the federal district court's retained jurisdiction over the case. The court reasoned that "a variety of state court decisions would tend to frustrate the antitrust policy of the consent decree." *Id.* at 603. Further, there, as here, the "need for exclusive jurisdiction in the federal district court" was recognized by the district court's explicit retention of jurisdiction in its final judgment. *Id.*

*Three J Farms, Inc. v. Plaintiffs' Steering Comm. (In re Corrugated Container Antitrust Litig.)*, 659 F.2d 1332 (5th Cir. Unit A Oct. 1981), *cert. denied*, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982), is also persuasive. There, the Fifth Circuit held that the district court properly enjoined plaintiffs in a federal multi-district class action from pursuing similar state class actions. The court concluded that the district court already had invested considerable time in the complicated litigation and that the state court action, which had produced a temporary restraining order effectively prohibiting settlement of the federal

action without state court approval, "clearly interfere[d]" with the federal court's ability to dispose of the case pending before it. *Id.* at 1335.

■ Moreover, it is not true, as the state plaintiffs argue, that the "necessary in aid of" exception is only available prior to the entry of judgment in federal court. As discussed above, *ASCAP* involved the application of the exception to a case brought nearly 21 years after final judgment where the district court had retained jurisdiction. More recently, the D.C. Circuit held the exception applicable to an injunction of a state court action challenging federal court orders implementing an earlier consent decree. *United States v. District of Columbia*, 654 F.2d 802 (D.C.Cir.), *cert. denied sub nom. Prince George's County, Md. v. United States*, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981). Nor does *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 501 F.2d 383 (4th Cir.1974), cited by the state plaintiffs, hold otherwise. There the district court enjoined, relying in part on the "in aid of" exception, the prosecution of a state court action which interfered with its ability to enforce its prior order of desegregation. The court stated that it was "apparent that the pending state suit could affect the Board's [of Education] efforts to comply with previous federal court desegregation orders." *Id.* at 384.

■ The contention that the "necessary in aid of jurisdiction" exception applies only to *in rem* proceedings where a *res* is involved is not supported by case law. *First, Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), cited by the plaintiffs for the proposition that the "in aid of" exception incorporated the historical "in rem" exception to the Act, is an opinion of only three justices of the Court and consequently is not binding precedent. *See Capital Service, Inc. v. NLRB*, 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954) (upheld injunction of state court action concerning a labor dispute under "in aid of" exception, thus, implicitly rejecting *in rem* requirement). *Second*, the plurality opinion in *Vendo* from which plaintiffs

882

quote discussed the inapplicability of the exception to *parallel* state and federal *in personam* actions. The present actions are not parallel; the federal action has proceeded to judgment.

Moreover, it makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered. As the district court stated, "[a]ny state court judgment would destroy the settlement worked out over seven years, nullify this court's work in refining its Final Judgment over the last ten years, add substantial confusion in the minds of a large segment of the state's population, and subject the parties to added expense and conflicting orders." *Battle v. Liberty Nat'l Life Ins. Co.*, 660 F.Supp. 1449, 1457 (N.D.Ala.1987). This lengthy, complicated litigation is the "virtual equivalent of a res." *Id.* (quoting *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985)).

*"To protect or effectuate its judgments"*

 The second exception to the Anti-Injunction Act applicable here allows a federal court to enjoin a state court action when "necessary ... to protect or effectuate its judgments," commonly called the relitigation exception. It is available so long as a state court has not "finally rejected a claim of res judicata." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 524, 106 S.Ct. 768, 772, 88 L.Ed.2d 877 (1986). If a state court has considered a claim of *res judicata,* the federal courts must then look to the state law to determine that decision's preclusive effect in order to comply with the Full Faith and Credit Act. *Id.* The Full Faith and Credit Act requires that a federal court give preclusive effect to a state court judgment to the same extent as would courts of the state in which the judgment was entered. *First Alabama Bank of Montgomery v. Parsons Steel, Inc.*, 825 F.2d 1475 (11th Cir.1987), *cert. denied sub nom. McGregor v. First Alabama Bank of Montgomery,* — U.S. —, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988).

 State law must be examined to determine whether the Alabama Supreme Court's decision in *Taylor,* reversing the trial court's grant of summary judgment for Liberty on *res judicata* grounds, would be considered a final judgment entitled to preclusive effect. Under Alabama law, finality for purposes of preclusion is equated with finality for purposes of appeal. *First Alabama Bank of Montgomery v. Parsons Steel, Inc.*, 825 F.2d 1475, 1480 (11th Cir. 1987) (citing *Sterling Oil of Oklahoma, Inc. v. Pack*, 291 Ala. 727, 287 So.2d 847 (1973)), *cert. denied sub nom. McGregor v. First Alabama Bank of Montgomery,* — U.S. —, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988).

The decision of the state supreme court here is not a final order because the denial of a motion for summary judgment is not a final judgment. *Food Service Distributors, Inc. v. Barber*, 429 So.2d 1025 (Ala. 1983). Because it is not a final order, it would not be given preclusive effect in state court and need not be accorded that deference in federal court.

This case is somewhat unique in that the "denial" of summary judgment came at the hands of the Alabama Supreme Court, and not the trial court, as is the usual case involving a summary judgment appeal. This distinction does not compel a different result here, however, because the result of the Alabama Supreme Court's reversal was a remand for trial. If the injunction had not halted this trial, the record might well have been developed to demonstrate that, as argued by Liberty National, sufficient notice of the settlement had been given to the Taylors. The Alabama Supreme Court would be free on a subsequent appeal to reverse its earlier due process holding. *See* Ala.Code § 12-2-13 (1975); *Havard v. Palmer & Baker Eng'rs, Inc.*, 293 Ala. 301, 302 So.2d 228 (1974) (rejecting argument that court's earlier ruling in favor of defendant in negligence case was res judicata) *overruled on other grounds, Ex Parte Ins. Co. of N. Am.*, 523 So.2d 1064 (Ala.1988); *City of Fairhope v. Town of Daphne*, 286 Ala. 470, 241 So.2d 887, 889 (1970) ("Under this statute, a former opinion does not conclude or influence us, upon

a subsequent appeal, and, if we consider our former opinion to be erroneous, it will be overruled."). Since the decision would be subject to further review in the state courts, both at trial and on subsequent appeal, it is not now a final, appealable order.

■ Finally, the district court was not required to reconsider, prior to issuance of the injunction, whether the *Taylor* plaintiffs were afforded due process in reaching the 1978 final judgment. A court must be allowed to act promptly to protect its jurisdiction from interference by state courts which threaten to destroy its ability to enforce its judgment. The district court did determine in its final judgment that about 90% of the policyholder class had received notice, reiterating this finding in its injunction order. Further, in issuing the permanent injunction, the court found that this notice was sufficient to satisfy even the more stringent notice requirements of a 23(b)(3) class, which the Alabama Supreme Court believed was the proper class for certification in this case. Most significantly, the court explicitly invited the state plaintiffs to make their due process challenge in federal court pursuant to a Fed.R. Civ.P. 60(b) motion or through an independent action. Their due process challenge is not foreclosed; it simply must be brought in the forum which has lived with this case for nearly two decades.

The district court acted properly in issuing the permanent injunction.

AFFIRMED.