Reather **LAWRENCE, Kari Brown and Abe Hunter III,** Plaintiffs,

v.

**HOUSEHOLD BANK (SB), N.A. and Household Credit Services, Inc.,** Defendants.

**Civil Action No. 2:03cv280–T.**

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 13, 2004.

---

Christopher W. Weller, George L. Beck, Jr., James N. Walter, Jr., Wyndall A. Ivey, Capell Howard PC, Montgomery, AL, George C. Douglas, Jr., Birmingham, AL, Jerry L. Thornton, Law Office of Jerry L. Thornton, Hayneville, AL, for Plaintiffs.

Andrew J. Noble, III, Ronald H. Kent, Jr., Bradley Arant Rose & White LLP, Birmingham, AL, Christopher R. Lipsett, Matthew Phineas Previn, Wilmer Cutler Pickering Hale & Dorr LLP, New York, NY, for Defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiffs Reather Lawrence, Kari Brown, and Abe Hunter III filed this law-suit against defendants Household Bank (SB), N.A., and Household Credit Services, Inc. in an Alabama state court, alleging violations of the federal Fair Credit Billing Act, 15 U.S.C.A. §§ 1666–1666j, as enforced by the Truth in Lending Act, 15 U.S.C.A. § 1640. Plaintiffs' claims arise out of defendants' policies regarding posting payments received from holders of its credit cards. Defendants removed this lawsuit to federal court pursuant to 28 U.S.C.A. §§ 1441 and 1446, properly invoking this court's jurisdiction under 28 U.S.C.A. § 1331.

After removing this case, defendants filed a motion to stay the proceedings pending arbitration under the Federal Arbitration Act, 9 U.S.C.A. §§ 1–16; plaintiffs, in turn, filed a motion for a jury trial on the question of whether the parties agreed to arbitration. In a separate opinion and judgment issued this date, the court granted defendants' motion in substantial part and denied plaintiffs' motion.

Since the parties' arbitration motions went under submission, defendants reached a proposed settlement in a separate class-action lawsuit filed in California state court arising out of their payment-posting policies. Plaintiffs have now filed several motions related to the California litigation. Plaintiffs move that this court (1) enjoin defendants from proceeding with their settlement in California; (2) permit plaintiffs to depose defendants' attorneys; and (3) sever Lawrence's claims from Brown's and Hunter's. Plaintiffs' motions will be denied.

## I. BACKGROUND

Plaintiffs hold credit cards issued by defendants. In their lawsuit originally filed on February 10, 2003, in an Alabama state court, they allege that defendants are violating the federal Fair Credit Billing

Act, 15 U.S.C.A. § 1666c, and the regulations promulgated to enforce the act, 12 C.F.R. § 226.10, by not posting payments received after 9:00 a.m. to a customer's account until the following day for some of their cards and by not posting payments received after 1:00 p.m. until the following day for other cards. As stated, this court, in a companion opinion and judgment issued this date, granted in substantial part defendants' motion to stay this case pending arbitration.

On October 19, 2000, James Shea and four other named plaintiffs, on behalf of themselves and others similarly situated, filed a lawsuit in the Superior Court of Orange County, California, asserting, among other claims, that defendants' practice of not crediting payments to their cardholders' accounts on the day the payments are received violates California common law.[1] The second amended complaint in *Shea*, filed on September 27, 2002, does not include any federal-law claims.

The parties have reached a proposed class settlement in *Shea*. The class is defined as all persons who currently have, or have had at any time between October 20, 1994, and March 18, 2004, one or more credit cards issued by defendants and who, during that time period, incurred finance charges, late fees for payments credited on the business day immediately following the payment due date, or overlimit fees.[2] Under the settlement agreement, class members would release defendants from any claims arising out of the acts that form the basis of the suit, including any claims arising under federal law.[3] The agreement

contains a provision that allows would-be class members to opt out of the settlement class.[4] The settlement is set for a final fairness hearing on November 1, 2004.[5]

## II. DISCUSSION

### A. Motion to Enjoin

Plaintiffs move for an order enjoining defendants from settling the federal-law claims at issue in this case on a class-wide basis in *Shea*. Plaintiffs argue that the *Shea* settlement is contrary to law because the plaintiffs did not plead federal-law claims, and, therefore, they cannot settle those claims. Plaintiffs argue further that the *Shea* settlement will interfere with this court's ability to resolve the federal-law claims before it, and that, therefore, the court has the authority to enjoin the *Shea* settlement.

■ "The question of whether to stay proceedings in a state court is never one to be taken lightly, as it impinges on the very delicate balance struck between the federal and state judicial systems." *Wesch v. Folsom*, 6 F.3d 1465, 1469 (11th Cir.1993). "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C.A. § 2283 (Anti–Injunction Act). "It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding."

---

**1.** *See* Pls.' Suppl. Opp. to Arbitration, filed June 3, 2004 (Suppl.Opp.), Ex. D, Second Am. Compl., filed Sept. 27, 2002, in *Shea v. Household Bank*, Case No. 00CC12585, Cal.Super. Ct., Orange County.

**2.** Suppl. Opp., Ex. B, Excerpts of Settlement Agreement, at 7–8.

**3.** *Id.* at 23.

**4.** *See* Suppl. Opp., Ex. A, Class Action Settlement Notice in *Shea v. Household Bank*, at 5–6.

**5.** *Id.* at 6.

*Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970); *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1102 n. 14 (11th Cir. 2004). Thus, this court is presumptively barred from issuing the injunction sought by plaintiffs unless it fits within one of the Anti–Injunction Act's three exceptions.

■ Two related propositions govern the application of the Anti–Injunction Act's exceptions generally. First, "since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts," the exceptions in the Act must be narrowly construed. *Atlantic Coast Line R.R.,* 398 U.S. at 287, 90 S.Ct. at 1743. Second, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of [§ ] 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion." *Id.* at 297, 90 S.Ct. at 1748.

■ Plaintiffs do not invoke the first or third exceptions to the Anti–Injunction act; instead, they argue that the injunction they seek is "necessary in aid of [this court's] jurisdiction."[6] The Supreme Court has set out two helpful, but somewhat inexact, guideposts for applying this exception. "First, a federal court does not have inherent power to ignore the limitations of [§ ] 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear." *Atlantic Coast Line*

*R.R.,* 398 U.S. at 294, 90 S.Ct. at 1747. "Second, ... it is not enough that the requested injunction is related to [a federal court's] jurisdiction, but it must be ... necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id.* at 295, 90 S.Ct. at 1747.

■ One widely accepted application of the "necessary in aid of its jurisdiction" exception is in *in rem* proceedings. "When particular property is before the district court, ... such as when it is the subject of an *in rem* proceeding or in the custody of a bankruptcy trustee, the court may generally enjoin proceedings in any other court regarding that property." *Klay,* 376 F.3d at 1103; *see also* 17A Moore's Federal Practice, § 121.07[2][d][i] (3d ed. 2004) ("The *in rem* exception is well-settled.").

■ In contrast, there is broad agreement that, as a general rule, a federal court may not issue an injunction to protect its jurisdiction in an *in personam* action. *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 642, 97 S.Ct. 2881, 2893, 53 L.Ed.2d 1009 (1977) (plurality opinion) ("The traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to [§ ] 2283 was intended to alter this balance. We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court."); *Kline v. Burke Const. Co.,* 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922) ("[A]n action brought to enforce [a personal] liability does not tend to impair

---

**6.** Because they do not rely on the "expressly authorized" exception, some of the authority cited by plaintiffs is not relevant. *See, e.g., In*

*re BankAmerica Corp. Sec. Litig.,* 263 F.3d 795, 801 (8th Cir.2001) (applying only the "expressly authorized" exception).

or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of *res judicata....* "). "In fact, even if there is a danger that the state court might decide first and thereby deprive the federal judiciary from resolving the matter because of *res judicata,* injunctions of state court actions still are not allowed." *Klay,* 376 F.3d at 1103 (quoting Erwin Chemerinsky, Federal Jurisdiction, § 14.2, at 842–43 (4th ed.2003)).

■ Applying the above rules, the court finds that it is without authority to enjoin defendants from proceeding in the California court. First, this case is indisputably one of *in personam* jurisdiction and is thus presumptively outside the "in aid of its jurisdiction" exception. Second, the court cannot see how the *Shea* settlement could "so interfer[e] with [its] consideration or disposition of [the] case as to seriously impair [its] flexibility and authority to decide [the] case." *Atlantic Coast Line R.R.,* 398 U.S. at 295, 90 S.Ct. at 1747. At this stage, this case involves only three individual plaintiffs, and they are free to opt out of the *Shea* settlement and pursue their federal claims here, in which event the court would have all the "flexibility and authority" it needs to decide this case.[7] Third, to the extent that the plaintiffs' argument is that the class-wide release in the *Shea* settlement will impair the ability of this court to decide the claims of their proposed class members, the above quotation from *Klay* makes it clear that such a concern is not a ground for an injunction

of a state-court proceeding. Finally, to the extent that plaintiffs argue that an injunction should issue because a California state court should not be allowed to dispose of federal-law claims, the Supreme Court has made it clear that such an argument is not grounds for an injunction. *Atlantic Coast Line R.R.,* 398 U.S. at 294, 90 S.Ct. at 1747. ("[A] federal court does not have inherent power to ignore the limitations of [§ ] 2283 and to enjoin state-court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law...."). Thus, under well-settled law, this court simply does not have the authority to issue the injunction the plaintiffs request.

In support of their motion, plaintiffs cite to a line of cases holding that, in some complex litigation, federal courts can enjoin state-court proceedings under the "necessary in aid of its jurisdiction" exception because the state-court proceedings threaten to undo substantial work of the federal court. *See In re Diet Drugs,* 282 F.3d 220, 239 (3d Cir.2002) (affirming injunction of a mass opt out by a state-wide class of plaintiffs in a complex multidistrict federal class action involving a six-million-member nationwide settlement class); *Winkler v. Eli Lilly & Co.,* 101 F.3d 1196, 1203 (7th Cir.1996) (finding that district court overseeing 75 cases consolidated by the Judicial Panel on Multidistrict Litigation had authority to enjoin state-court actions that conflicted with pre-trial discovery order); *In re Baldwin-United Corp.,* 770 F.2d 328, 338 (2d Cir. 1985) (affirming injunction barring States from bringing separate actions in multidistrict case involving over 100 lawsuits against 26 defendants). The Eleventh Circuit has reached similar holdings. *See,*

7. Alternatively, it is possible, although admittedly unlikely, that the plaintiffs will accept the *Shea* settlement and dismiss their claims here.

*e.g., Battle v. Liberty Nat'l Ins. Co.*, 877 F.2d 877, 880–82 (11th Cir.1989) (affirming injunction of state-court class-action lawsuits that would have interfered with the administration of a federal class-action settlement reached after seven years of litigation). In these cases, the courts have reasoned that some complex federal cases—particularly those involving multi-district litigation, substantial pretrial litigation, extended settlement negotiations, or actual settlements—are analogous to *in rem* actions because the lawsuits themselves are "the virtual equivalent of a *res* to be administered." *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir.1993); *Battle*, 877 F.2d at 882.

This case, however, is nothing like the cases discussed above. As it stands now, this case, unlike the massive litigation in *Diet Drugs* or *Baldwin–United*, involves but three plaintiffs (two of whom must arbitrate their claims) and one defendant. This litigation does not involve multiple cases transferred by the Judicial Panel on Multidistrict Litigation, and, as of yet, there is not even a class certified. Furthermore, this litigation has not progressed a whit, so there is nothing like the settlement in *Battle* or the pretrial orders in *Winkler* to protect from interference by the California court. Indeed, it is evident that the *Shea* litigation in Orange County is much further along and is, at this time, purported much more complex than this case. Accordingly, the court finds the line of complex litigation cases relied upon by plaintiffs inapposite.

Finally, plaintiffs' argument, raised repeatedly, that the *Shea* settlement is contrary to federal and state law, even if true, is not a ground upon which this court can issue an injunction directed at the California court. *Atlantic Coast Line R.R.*, 398 U.S. at 296, 90 S.Ct. at 1748 ("Nor was an injunction necessary because the state court may have taken action which the federal court was certain was improper.... [L]ower federal courts possess no power whatever to sit in direct review of state court decisions."). If plaintiffs think that the *Shea* settlement is improper, then, as members of the proposed settlement class in *Shea*, they can object to the settlement and pursue their argument in the California state courts.

## B. Motions to Depose

Plaintiffs move for leave to depose defendants' attorneys regarding the *Shea* settlement; they assert that the depositions are necessary to determine if defendants' lawyers "informed the Plaintiff, Plaintiff's counsel, and/or Superior Court in *Shea* of the existence of this action prior to signing the settlement agreement in that case." [8] It appears that plaintiffs intend to use the results of their proposed depositions to challenge the legality of the *Shea* settlement.

 The decision whether to grant leave to conduct depositions is left to this court's discretion. *Wayne v. Jarvis*, 197 F.3d 1098, 1106 (11th Cir.1999). Plaintiffs, however, have articulated no basis for this court to exercise its discretion to interfere with the settlement process in *Shea*. As noted above, if plaintiffs are concerned about the propriety of the *Shea* settlement, they can make their arguments to the California court. Accordingly, the plaintiffs' motions to depose will be denied.

## C. Motion to Sever

 Plaintiffs move to sever their claims so that Lawrence, who does not have an arbitration provision in her cardmember agreement with defendants, can proceed separately from Brown and Hunt-

---

**8.** Pls. Mo. for Leave to Depose, etc., filed July 1, 2004, at 1.

er. In their motion, filed while defendants' motion to stay was still pending, plaintiffs argue that severance will allow Lawrence to move forward while the court considers whether to order arbitration of Brown's and Hunter's claim.

Because the court, as of this date, has ordered Brown and Hunter to arbitrate their claims and allowed Lawrence to proceed in this court, the plaintiffs' motion is moot. There is no reason that Lawrence cannot now proceed with her claim, so a severance is unnecessary. Accordingly, plaintiffs' severance motion will be denied.

### III. CONCLUSION

For the reasons given above, it is ORDERED as follows:

(1) Plaintiffs' motion to sever (doc. no. 38) is denied;

(2) Plaintiffs' motion to enjoin, etc. (doc. no. 39) is denied;

(3) Plaintiffs' motions for leave to depose, etc. (doc. nos. 40 & 44) are denied.